SEYMOUR N. MARSH, Appellant, *v.* EDWARD ELLSWORTH et al., Respondents.

In proceedings by one C. for his discharge in bankruptcy, defendant, E., a creditor, opposed his discharge upon the ground that he was a partner in the firm of M. & Co., and had fraudulently omitted from his inventory his interest in the property of said firm. Plaintiff, a member of said firm, was called as a witness by the defendants upon the hearing before the register. Plaintiff's testimony tended to show that C. was not a member of the firm. Defendant, C., as attorney for E., filed objections to the discharge; among others, one charging the bankrupt with procuring plaintiff to testify falsely as to who were the partners in the firm, and as to the connection of the bankrupt therewith. In an action of libel,—*Held*, that the question as to whether the evidence of plaintiff was true or false was material and pertinent; that defendants were not precluded by the fact that plaintiff was called as a witness by defendant, E., from insisting that his testimony was false; and that the publication was privileged.

(Argued November 18, 1872; decided November 26, 1872.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order overruling plaintiff's exceptions and directing judgment upon a verdict for defendants.

This was an action of libel. The alleged libel and the facts connected with its publication sufficiently appear in the opinion.

The court upon trial directed a verdict for defendants, to which plaintiff duly excepted, and verdict was rendered accordingly.

*Ira D. Warren* for the appellant. Privileged communications of parties and attorneys are limited to matters which are pertinent and material. (*Gilbert* v. *People,* 1 Den., 41; *Ring* v. *Wheeler,* 7 Cow., 725; *Suydam* v. *Moffatt,* 1 Sand., 463, 464; *Wright* v. *Woodgate,* 2 Crom., W. & R., 573; Pleas of the Crown, 2, p. 128, § 8.) The court erred in not submitting the question to the jury. (*White* v. *Carroll,* 42 N. Y., 161; *Suydam* v. *Moffatt,* 1 Sand., 463, 464; *Hastings* v. *Lush,* 22 Wend., 414; *Fowles* v. *Bowen,* 30 N. Y., 26.)

*Wm. C. Clifford* for the respondents. The words used were pertinent and material, and it was unnecessary for defendants to deny the allegation of malice. (*Garr* v. *Selden,* 4 Comst., 91; *Hastings* v. *Lush,* 22 Wend., 410; 36 How. Pr., 532, 537.)

GROVER, J. The alleged libel was matter included in the objections filed by the defendant, Coursen, as counsel for the defendant, Ellsworth, to the discharge from his debts of George Caldwell with the register in bankruptcy, to whom the matter had been referred by the court upon the petition of Caldwell for his discharge. Upon the hearing of the reference, Ellsworth, an opposing creditor of Caldwell, sought to prevent the discharge of Caldwell by showing that he was a partner in the firm of Marsh & Co., and, as such, entitled to an interest in the property of the firm, which he had fraudulently omitted from the inventory of his property. Caldwell insisted that he was not nor ever had been such partner; but that from 1850 to 1854 one Read, his father-in-law, was the partner of the plaintiff in the business carried on; and that in the latter year Read transferred his interest to his (Caldwell's) wife, who since had been the partner of the plaintiff; during all of which time he had been employed by Read and his wife to aid in carrying on the business at a salary of $5,000 a year, which salary he had drawn and expended in the support of his family. The defendant, Ellsworth, introduced the plaintiff as a witness, who gave testimony tending

to sustain the position of Caldwell. The alleged libel was in the third objection to the discharge filed by Coursen, as counsel on behalf of Ellsworth, the opposing creditor, as follows: "And the said creditor (Ellsworth) charges the said bankrupt with procuring his wife and Marsh (the plaintiff) to testify falsely, in the course of their examination in the proceedings, in regard to material facts in relation to the proceedings, in inducing said Marsh to testify that the said bankrupt was only a salaried employe of said Marsh & Co., and that the share of the business assets and property of said firm, which in truth and fact belonged to the bankrupt, had, prior to 1854, been the property of one Joshua Read, and since 1854 had been and now is the property of said Eleanor J. Caldwell." It is obvious that the design of this objection, if made in good faith, was to induce a belief in the referee that the testimony of the plaintiff was false and perjured, and should be so regarded in determining the case. The fact that the bankrupt was charged with suborning him to give false testimony is not material, as his criminality (if guilty) consisted in knowingly giving false testimony; and this would not be at all aggravated by having done it by the persuasion of the bankrupt. This suggestion was probably made in the belief of Coursen that the statement would be more readily credited by assigning this motive. The fact that the plaintiff was introduced by Ellsworth is equally immaterial; as a party introducing a witness, though precluded from giving evidence impeaching his character, is nevertheless at liberty to prove that his testimony is untrue, either from mistake or intentional falsehood, and so to insist to the tribunal, whose duty it is to determine upon the credibility of the testimony. The question is whether this publication was privileged. The law is well settled that a counsel or party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; and that, within such limit, the protection is complete, irrespective of the motive with

which they are used; but that such privilege does not extend to matter, having no materiality or pertinency to such questions. (*Gilbert* v. *The People*, 1 Denio, 41; *Hastings* v. *Lusk*, 22 Wend., 410; *Ring* v. *Wheeler*, 7 Cowen, 725.) This is necessary to a thorough, searching investigation of truth. Should those engaged in the management of causes before courts be placed in fear of prosecutions for slander for reflections cast upon the credibility of parties and witnesses, and their defence made to depend upon the truth of what is said, trials of questions of fact, depending upon the credibility of witnesses, would be far less likely to lead to as correct results as in cases where no such embarrassment was felt. In the latter, the court and jury will have their attention called to every consideration having a tendency to enable them to arrive at the truth. This tends to promote an intelligent administration of justice. To secure this is of much greater importance than to prevent the evils arising from reflections cast upon parties or witnesses. Such reflections, if unfounded, produce no lasting injury, as their injustice will almost invariably be made apparent during the trial, and those only injured who have resorted to their use without any substantial ground therefor. Besides, the proper exercise of the powers of the presiding judge will, in most if not in all cases, prevent any abuse of this privilege. The privilege under consideration, it will be seen, is much more extensive than in many other cases where communications are termed privileged, as in giving the character of servants, etc. In the case of counsel, everything pertinent and material to the question involved is privileged, irrespective of the motive. (See cases, *supra.*) In the latter, the extent of the privilege is to repel the presumption of malice which the law implies from making the communication when there is no privilege, and bar a recovery in the absence of proof of express malice. *Wright* v. *Woodgate* (2 Crompton, Meeson & Roscoe, 573), cited by the plaintiff's counsel, was a case of the latter class; and all that is there said by the judge related to this class only, and has no relation to the extent of the privilege of

members of the legislature in their deliberations or of counsel in the trial of causes. *White* v. *Carroll* (42 N. Y., 161), rightly understood, is in harmony with the other cases. The case shows that the court held that the answer given to the question put to the defendant as a witness before the surrogate was not material and pertinent to the inquiry; and further held it was privileged if the defendant, when he gave it, in good faith believed it was; and whether he so believed was a question of fact to be determined by the jury. Had the evidence proved that the answer was material and pertinent, the court must have held it privileged, irrespective of the defendant's belief upon the subject. Applying the law to the present case, we find that the evidence proved that the point in issue before the referee was whether Caldwell, the bankrupt, was a member of the firm of Marsh & Co., and, as such, entitled to a share of the property of the firm. The testimony of the plaintiff was to the effect that he was not such partner, but that his wife was. It was therefore a material and pertinent question whether this testimony was true; and the counsel of the opposing creditor was therefore privileged in insisting, in his objections to the discharge, that it was not true, even if it was necessary for the defendant in this case to go further, and show that there was some reason for the imputation upon the plaintiff, that was shown. It was proved that Caldwell had been engaged for some ten years in the business of the firm; that he managed its financial business, drew the checks, in short, acting the same as if a partner. While this did not satisfy the referee that he was such, and that the plaintiff's testimony was false, it furnished ground to the counsel to argue to that effect.

The judgment of the General Term, affirming the judgment for the defendants, must be affirmed.

All concur.

Judgment affirmed.