AMASA R. MOORE, Appellant, *v.* THE MANUFACTURERS'
NATIONAL BANK OF TROY et al., Respondents.

The privilege which protects libelous charges made in papers used in the
prosecution or defense of an action, does not include imputations vol-
untarily made, which are plainly irrelevant and impertinent, and which
the party making them could not reasonably have supposed to be
relevant.

Where there are, in the same publication, several distinct charges, some
privileged and some not, those not privileged are not justified by those
that are.

Where no ground appears upon the face of the publication upon which to base a claim that the libelous charge was relevant or material, it may not be assumed, and the burden of showing their relevancy rests upon the party making them. (EARL and O'BRIEN, JJ., dissenting.)

*It seems,* however, no strained or close construction will be indulged in to exempt a case from the protection of privilege.

Defendant, claiming that its cashier had misappropriated and embezzled its funds, brought an action against the sureties upon his bond, and, upon request, delivered to an agent of the sureties a paper containing an itemized account of the alleged defalcations, which contained items described as "cash items drawn from the bank by collusion with the teller, without the knowledge or authority of the officers of the bank." The same statement appeared in a similar account, subsequently furnished by defendant as a bill of particulars in said action on demand of the attorneys for the sureties. In an action for libel it appeared that plaintiff was defendant's teller during the period referred to, and that he was not a party to the bond or to the suit upon it. *Held* (EARL and O'BRIEN, JJ., dissenting), that the communication was libelous, and was not privileged, and so, that malice was presumed.

*Klinck* v. *Colby* (46 N. Y. 427); *Marsh* v. *Ellsworth* (50 id. 309), distinguished.
*Moore* v. *Man. Nat. Bank* (51 Hun, 472), reversed.

(Argued June 6, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made February 7, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Matthew Hale* for appellant. The court erred in submitting to the jury the question whether the defendants had proved certain facts alleged in the answer in mitigation of damages when no proof whatever had been given or offered by the defendants to sustain such allegations. (*Willower* v. *Hill,* 72 N. Y. 36, 38; *White* v. *Cheesebro,* 16 Wkly. Dig. 186; *Ball* v. *E. P. P. Co.,* 38 Hun, 11, 16; Code Civ. Pro. § 536; *Booth* v. *B. & A. R. R. Co.,* 67 N. Y. 593; *Wilson* v. *Law,* 112 id. 536, 542.) The libelous matter was not privi-

leged. (*Gilbert* v. *People*, 1 Den. 41; *Ring* v. *Wheeler*, 7 Cow. 725; *Marsh* v. *Ellsworth*, 50 N. Y. 309; *Hoar* v. *Wood*, 3 Metc. 193; *Rice* v. *Coolidge*, 121 Mass. 393; *McLaughlin* v. *Cowley*, 127 id. 316; *Wyatt* v. *Douglas*, 37 N. Y. 477.) The errors above pointed out were injurious to the plaintiff, and were, no doubt, the cause of the trifling verdict which was rendered for publishing a libelous charge against the plaintiff of the gravest character. It imputed to him no less than twenty-three distinct crimes, for each one of which he would be liable to imprisonment for not less than five nor more than ten years. (U. S. R. S. § 5209; Code Civ. Pro. § 1294; *Parker* v. *Newland*, 1 Hill, 87; *Hughes* v. *Stickney*, 13 Wend. 280; *Bockes* v. *Hathorn*, 78 N. Y. 222.)

*R. A. Parmenter* for respondents. Both statements are privileged communications. (*Lewis* v. *Chapman*, 16 N. Y. 369, 374; *R. R. Co.* v. *Quigley*, 21 How. [U. S.] 202; *Barrows* v. *Bell*, 7 Gray, 301; *Dale* v. *Harris*, 109 Mass. 193; *Fowles* v. *Bowen*, 30 N. Y. 20; *Coffin* v. *Coffin*, 4 Mass. 1; *Ormsby* v. *Douglass*, 37 N. Y. 477; *Burlingame* v. *Burlingame*, 8 Cow. 141; *Washburne* v. *Cooke*, 3 Den. 110; *Todd* v. *Hawkins*, 8 C. & P. 88; *Klink* v. *Colby*, 46 N. Y. 427; *Atwell* v. *Mackintosh*, 120 Mass. 127; *Howard* v. *Thompson*, 21 Wend. 319; *Clapp* v. *Devlin*, 3 J. & S. 176; *Kelley* v. *Waterbury*, 87 N. Y. 179; *Warner* v. *Paine*, 2 Sandf. 195; *Perzel* v. *Fonsey*, 20 J. & S. 79.) It was properly submitted to the jury to say whether the statements were made in good faith or whether they were wanton and malicious, and to charge that if they were made without any intention to injure the character of the plaintiff, but in the belief that it was proper to make them : (1) to a person interested in the action on the bond; and (2), in the bill of items, such circumstances were to be taken in mitigation of damages. (*Klink* v. *Colby*, 46 N. Y. 427, 431; *Clapp* v. *Devlin*, 3 J. & S. 170.) The court was not bound to charge as to what the evidence was or was not in the case. To determine that was the province of the jury. (*Starin* v. *Kelly*, 4 J. & S. 366; *Harrold* v. *N.*

*Y. E. R. R. Co.*, 24 Hun, 184; *Clapp* v. *Devlin*, 3 J. &. S. 170; *Moody* v. *Osgood*, 54 N. Y. 488.)

ANDREWS, J.    This is an action for libel.    On the trial the plaintiff recovered a small verdict.    He appealed to the General Term from the judgment in his own favor, on the ground that the trial judge admitted improper evidence offered by the defendant, and also that he erroneously submitted to the jury the question whether certain facts alleged in the answer of the defendant, in mitigation of damages, existed, although there was an absence of any proof to sustain such allegations.    It is claimed that, by reason of these errors, the plaintiff was prejudiced in respect of the award of damages.

There is, we think, no doubt that errors were committed by the trial judge in the respects mentioned.    The plaintiff is, therefore, entitled to a new trial, unless the defendant is right in his contention that the alleged libel was a privileged publication, and, therefore, no recovery whatever was justified.

It will be sufficient to state very briefly the facts upon which the action is based, in order to present the question to be determined.    In 1883, the Manufacturers' National Bank of Troy, claiming that its cashier had misappropriated and embezzled the property and funds of the institution, brought an action on the cashier's bond against the surviving surety and the representatives of a deceased surety to recover the amount of the alleged defalcation.    The agent of some of the defendants in the action thereupon applied in writing to the attorneys of the bank for a statement of the claim.    This was furnished, but not in detail, and the agent of the sureties, desiring fuller information, called at the banking-house of the bank and there had an interview with the cashier and requested him to furnish as particular and complete an account as he could, " so that we could see how we stood."    In compliance with the request, the bank by its cashier prepared and delivered to the agent of the sureties a paper indorsed, " A partial statement in detail of the defalcations of A. B., late cashier of The Manufacturers' National Bank of Troy," which contained an item-

ized account, with dates and amounts constituting the claim. The account comprised a statement of alleged false charges made by the cashier in the accounts of depositors, items for drafts and securities of the bank abstracted, and, in addition, items amounting in the aggregate to $16,621.95, entered in the account as "cash items drawn from the bank *by collusion with the teller*, without the knowledge or authority of the officers of the bank." The alleged libel for which this action is brought is founded on the words "by collusion with the teller," contained in this statement, and also on a repetition of the same words in a similar account subsequently furnished as a bill of particulars in the action, on the demand of the attorneys for the sureties. The plaintiff in the present action was the teller of the bank during the period of the alleged defalcations by the cashier, and no question is made but that the words "by collusion with the teller," contained in the statement delivered to the agent of the sureties and in the bill of particulars referred to him.

It cannot admit of question that the publication was libelous and sustained the action, unless the publication was, as claimed, privileged. It charged the plaintiff with complicity in the crime of embezzlement committed by the cashier. The words are susceptible of no other interpretation. The general doctrine of privilege, as applied to actions for libel and slander, is founded upon the reasonable view that in the intercourse between members of society, and in proceedings in legislative bodies and in courts of justice, occasions arise when it becomes necessary or proper that the character and acts of individuals should be considered and made the subject of statement or comment, and that, in the interests of society, a party making disparaging statements in respect to another on such a lawful occasion, should not be subjected to civil responsibility in an action of this character, although such statements were untrue. The law of privilege has been stated by judges in different forms of words, but the comprehensive definition of BLACKBURN, J., in *Davis* v. *Sneed* (L. R. [5 Q. B.] 611), as applied to communications between individuals, is especially

worthy of notice. "Where," says that learned judge, "a person is so situated that it becomes right in the interests of society that he should tell a third person certain facts, then if he, *bona fide* and without malice, does tell them, it is a privileged communication." There are many examples in the books of communications held to be privileged, where the same words, if used other than on a lawful occasion, would be libelous, but which, by reason of the occasion when they were published or spoken, will not sustain an action, although proved to be untrue, unless proved to have been spoken maliciously. The cases of charges made in giving the character of a servant, or in answering an authorized inquiry concerning the solvency of a tradesman, or where the communication was confidential between parties having a common interest in the subject to which it relates, are illustrations. (Bronson, J., *Washburn* v. *Cooke*, 3 Den. 112.) In these and like cases, the privilege is not absolute, but conditional, that is to say, the occasion being lawful, the communication is *prima facie* privileged and rebuts the inference of malice which would otherwise arise, and imposes on the plaintiff, who prosecutes an action of slander or libel, the burden of proving that the defendant was moved by actual malicious intent in making the communication, and, failing in that, he fails in the action. But, as has been said, if the occasion is not a privileged one, the same words may give a right of action, as where an employer, being under no duty, legal, moral or social, to give information, makes defamatory statements affecting the servant's character, or where a person, under like circumstances, imputes insolvency to a trader. In such cases the law presumes both malice and the falsity of the words, and the defendant is liable for damages unless he can prove that the words were true.

There is another class of privileged communications where the privilege is absolute. They are defined in *Hastings* v. *Lusk* (22 Wend. 410). In this class are included slanderous statements made by parties, counsel or witnesses in the course of judicial proceedings, and also libelous charges in pleadings,

affidavits or other papers used in the course of the prosecution or defense of an action. In questions falling within the absolute privilege the question of malice has no place. However malicious the intent, or however false the charge may have been, the law, from considerations of public policy and to secure the unembarrassed and efficient administration of justice, denies to the defamed party any remedy through an action for libel or slander. This privilege, however, is not a license which protects every slanderous publication or statement made in the course of judicial proceedings. It extends only to such matters as are relevant or material to the litigation, or at least it does not protect slanderous publications plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant. (*Ring* v. *Wheeler*, 7 Cow. 725; *Hastings* v. *Lusk*, 22 Wend. 410; *Gilbert* v. *People*, 1 Den. 41; Grover, J., *Marsh* v. *Ellsworth*, 50 N. Y. 309; *Rice* v. *Coolidge*, 121 Mass. 393; *McLaughlin* v. *Cowley*, 127 id. 316.)

Where the claim of privilege is interposed as a defense to an action for libel or slander, it is not the test of privilege that the words were uttered or published on a privileged occasion. Where there are several distinct charges, some privileged and some not privileged, those not privileged are not justified by the charges that are privileged. (*Clark* v. *Roe*, 4 Ir. C. L. 1; *Tuson* v. *Evans*, 12 Ad. & El. 733; *Warren* v. *Warren*, 1 C. M. & R. 250.) The policy upon which the doctrine of privilege rests does not call for an extension of the privilege to such cases. The public interests are sufficiently protected when the privilege is limited to communications which fairly ought to have been made, or in case of judicial proceedings to matters not wholly outside of the cause. But no strained or close construction will be indulged in to exempt a case from the protection of privilege.

Both occasions on which the publication in this case was made were privileged, that is to say it was the right of the sureties to receive, and it was the reasonable duty of the

defendants to give all proper information bearing upon the claim made by the bank against the sureties. The occasion, therefore, justified the bank in disclosing the facts relating to the alleged defalcation of the cashier, and even if the bank was misinformed, and there had been no defalcation in fact, such information was privileged, and the cashier could have maintained no action unless, perhaps, in respect to the first publication on proof of actual malice. But the incorporation into the publication of the statement that the teller acted in collusion with the cashier was, so far as appears, wholly irrelevant and unnecessary. The teller was not a party to the bond or to the suit. There was no issue which called for an investigation of the teller's conduct. The information that the teller had been in complicity with the cashier was not in response to any inquiry made by the defendant. The information did not on its face explain, or tend to explain or establish any fact relevant to the defendants' case against the sureties, nor can it be seen how knowledge of the fact communicated would be of advantage to the sureties. If upon any ground the information was relevant or material, as no such ground appears on the face of the publication, we are not at liberty to assume its existence. The burden of showing its relevancy under the circumstances was upon the defendants. It is not impossible that a narration on the trial, of the facts as to the defalcation of the cashier, might incidentally involve a disclosure of the acts of the teller, but this did not, we think, justify the defendants in the publication in advance of the defamatory matter as to the teller, not so far as appears, having any relevancy to the liability of the sureties on their bond. *Prima facie* the publication was not privileged.

The ordinary consequence follows that malice is presumed from the defamatory nature of the publication, and the defendants must rely for their defense upon a justification (which was not attempted) or upon proof in mitigation of damages. The cases of *Klinck* v. *Colby* (46 N. Y. 427) and *Marsh* v. *Ellsworth* (50 id. 309), are not inconsistent with the conclusion we have reached. Both cases recognize the rule that the

,question of privilege depends upon there being a lawful occasion ·for speaking and the use of words pertinent to that ·occasion.

The conclusion reached requires a reversal of the judgments at the Circuit and General Term and a direction for a new trial.

O'Brien, J. (dissenting).    The plaintiff appeals from a judgment of $200 in his own favor, recovered in an action for damages by reason of the publication of an alleged libel.    A reversal of the judgment is sought upon the ground that certain rulings made at the trial were erroneous, and so preju- ·diced the plaintiff's case that the verdict was wholly inade- quate to the injury sustained.    One of the most prominent of the rulings complained of is the admission of proof, in behalf ·of the defendant, ·of the names of the directors who had charge ·of the management of the defendant at the time of the publi- ·cation of the paper which is the subject of the action.    The General Term was of the opinion that the publication was privileged, and as the plaintiff was not, upon the facts, entitled to recover anything in this view, the rulings, even if wrong, ·were immaterial.    The point was raised by the defendant at ·the trial, by motion for a nonsuit at the close of the plaintiff's case, and again before the case was sent to the jury.    If the ·views of the court below, concerning the character of this ·publication, are correct, it must be admitted that the plaintiff has no just ground to complain, having recovered a small verdict when he was not entitled to any.    In order to get a ·clearer view of the question a brief statement of the facts is necessary.    During many years prior to September, 1882, the plaintiff was employed by defendant as its teller, and during ·the same, or a part of the time, one Wellington was its cashier, ·but their relations as officers or employes of the defendant terminated about that date.    The cashier had given a bond for the faithful performance of his duties, and the defendant claimed that the sureties were liable thereon for the reason that the cashier had abstracted or misapplied the funds of the bank, and was in default in his accounts as such cashier in a

sum amounting to several thousand dollars. The bond was signed by the cashier and five persons as sureties, of whom one, John M. King, died prior to the alleged breach thereof by the cashier, or prior to its discovery, and his daughter, Mrs. Daniels, and one Ends were appointed administrators. In the month of June, 1883, suit was brought by the bank on this bond, and the personal representatives of the deceased surety above named were made defendants with the other sureties, one of whom interposed an answer. The defendant thus answering procured an order from the court requiring the bank to furnish a bill of particulars of its claim, which was furnished, verified by the defendant Gleason, the new cashier of defendant, January 2, 1884, and served by the attorneys for the bank on the attorneys who appeared for the surety answering about the same date. This is the paper containing the libelous matter upon which the complaint in this suit is based. It was entitled in the action by the bank against the sureties, and contained a detailed statement of the items and dates of the funds which it was claimed the defaulting cashier had misappropriated. Some of the items were distinguished from the rest by a heading in these words: " Cash items drawn from the bank by collusion with the teller, without the knowledge of the officers of the bank." These items were quite numerous and amounted in the aggregate to $16,621.95. Before the service of this paper and shortly after the commencement of the suit on the bond by the bank, Judge DANIELS, in behalf of his wife, who was a defendant, as administratrix of her father, one of the sureties, called at the bank and requested Gleason, the cashier, to furnish him a statement of the claim of the bank upon the bond, in order, as he states, " to get a more complete account of the misappropriations." He told the cashier that he wanted as complete a statement as he could get " so that he could see how we stood," and " what the facts were." After some further conversation the cashier promised to make such a statement, which he did, in substantially the same form as the bill of particulars in the suit, and Judge DANIELS, on a day subse-

quent, called again, and it was delivered to him, either by the cashier himself or some one in his presence.  There is no dispute as to these facts, from which it will be seen that the only reference to the plaintiff, contained in the statement, is through the use of the words "by collusion with the teller." The plaintiff's case, then, must stand, if at all, upon the publi- cation of this paper on two different occasions and in two ways : First, by the delivery of the same to Judge Daniels, who was interested in the claim upon the bond, and who had the right to inquire as to all the facts, by the cashier of the defendant, with a corresponding right and duty ; and again by the delivery of the paper by defendant to its attorney in the suit upon the bond for service in the regular course of judicial proceedings and in compliance with an order directing a bill of items to be served.  It is necessary, therefore, to refer to what, in the law of libel, is known as two classes of privileged communications, namely, where the party publishing and the party to whom delivered have a common interest in the mat- ter to which the publication relates, and such publications as are made in the conduct and progress of a suit in a court of justice.  The bill of particulars was but an amplification of the pleadings and stands upon the same ground as the complaint would had the bank been required by order to make it more definite and certain.  In this class of publications the privilege is said to be as broad and absolute as in the case of words spoken by a member of a legislative body, however false and malicious the statement may be, providing it be relevant and pertinent to the issue or question involved.  (*Hastings* v. *Lusk*, 22 Wend. 410; Odger on Libel & Slander, 190–192.)

The privilege attached to the class first mentioned is not absolute but conditional and *prima facie* only, and can always be overcome by proof on the part of the plaintiff of express malice.  Publications between parties relating to mat- ters of business in which they have a mutual interest, differ from those in judicial proceedings in respect to privilege, in a very important particular.  In the former case the party injured by defamatory words may still maintain an action, for

the privilege only puts upon him the burden of proving malice in fact, while in the latter class the privilege is an absolute bar, however false and malicious the publication may in fact be. But the broader and more absolute privilege which the law gives to defamatory publications made in the course of judicial proceedings, must necessarily include the minor and more limited privilege which attaches to such publications when made between parties mutually interested in matters of business or of a confidential nature. Hence, if the publication in question, made to Judge DANIELS, was privileged, it must necessarily follow that the delivery by the defendant of the same paper to its own attorney, who had charge of the suit upon the bond, for service in compliance with an order of the court, is protected by at least a like privilege because the occasion of the publication and the circumstances under which the paper was delivered removes the presumption of malice as much in the one case as in the other. The question then is whether the delivery by the defendant of the paper to Judge DANIELS, under the circumstances disclosed by the evidence, was a privileged communication. Malice is an essential element to justify a recovery in any action to recover damages for a libelous publication. There are different modes of proving it, according to the circumstances under which the publication is made. In the case of defamatory publications, not privileged, the law infers or presumes malice ; *but if the publication be privileged,* and the privilege is not absolute, the plaintiff must prove malice in fact like every other essential fact in the case. If the publication in this case is of such a nature and was made under such circumstances as to remove the legal presumption of malice, the plaintiff was not entitled to recover, as it is not claimed that he gave any proof from which malice in fact could have been found. Privileged communications of the character now under consideration have been the subject of definition by courts and text writers since actions of libel and slander were known. It is sufficient for all purposes of this appeal to refer briefly to what this court has held from time to time on that question. In *Lewis* v. *Chapman* (16 N. Y.

374), Judge Selden, speaking for the court, said: "Where the communication is made *bona fide*, in answer to inquiry from one having an interest in the information sought, or where the relation between the parties by whom and to whom the communication is made is such as to render it reasonable and proper that the information should be given, it will be regarded as privileged." In *Klinck* v. *Colby* (46 N. Y. 427), Judge Folger, speaking for the court, said that a privileged communication was one where "the occasion on which it was made rebuts the inference arising, *prima facie*, from a statement prejudicial to the character of the plaintiff, and puts it upon him to prove that there was malice in fact, and that the defendant was actuated by motives of personal spite and ill will," and that "such an occasion, is when a communication is fairly made by a person in the discharge of some private or public duty, legal or moral, or in the conduct of his own affairs in matters where his interests are concerned." And again, "a written communication between private persons concerning their own affairs is *prima facie* privileged, and though all that was said is under mistake, yet the words are not, for that reason alone, actionable. * * * Where both the party making and the party receiving the communication have an interest in it, it has never been doubted that it was privileged."

In *Hamilton* v. *Eno* (81 N. Y. 116), Judge Folger, again speaking for the court on this point, said: "There are certain communications which are privileged and *prima facie* excusable because of the occasion; that is, they will not be deemed libelous, though the party making them may not be able to prove them to be true, and may in fact be wrong in thinking them to be so. The effect of the privilege is this: That the law will not imply malice from the fact of the publication, and without malice, express or implied, there is no libel. To make the author of the charge liable in such case, actual malice must be shown to have moved him." In *Byam* v. *Collins* (111 N. Y. 143), Earl, J., giving the opinion of the court as to what constituted a privileged communication, quoted the definition given by Lord Campbell in *Harrison* v. *Bush* (5

Ellis & Black, 344): "A communication made *bona fide* upon any subject-matter in which the party communicating has an *interest*, or in reference to which he has a *duty*, is privileged if made to a person having a corresponding *interest* or duty, although it contained criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." It will be seen from these cases and others that might be cited that the privilege does not depend upon the caution which the person making the communication uses in the selection of proper words, or his care in avoiding the use of matter not strictly relevant or pertinent, but upon the occasion and the circumstances that gave rise to the statement. The publication may be false and defamatory, and a court might be able to see that it was unnecessary and irrelevant. Yet it is privileged if made under such circumstances and on such occasion as to remove from it the legal inference and presumption of malice, and a recovery can be had only when express malice is proved. (*Vanderzee* v. *M'Gregor*, 12 Wend. 545; *Washburn* v. *Cooke*, 3 Den. 110.)

The case of *Klinck* v. *Colby* (*supra*) cannot be distinguished from this, either in the principle decided or in its general features upon the facts. In that case certain New York merchants signed a paper in which they stated that they had "been robbed and swindled" by six persons named therein, and they agreed mutually to bear the expenses of prosecuting them criminally, and to contribute equally towards the payment of any judgment recovered against any of the parties signing the paper, arising by reason of any criminal complaint made against the accused persons by any of the signors. This court held that the publication was privileged, and no recovery could be had without proof of express malice. In its legal and moral features, that case, as it seems to me, was much stronger for the plaintiff than the one at bar. That paper was an agreement on the part of the defendants to furnish money for the expenses of a prosecution on a charge of crime, a duty which devolves upon the public authorities, while in this case

the papers are delivered by the cashier or some employe of a bank to a person interested in the payment of a claim which it held. Granting that the purpose and motive of furnishing money to aid in the punishment of a crime may be lawful and even laudable, it is still difficult to see why the use of the terms "robbed and swindled" were at all necessary or relevant. While the court said that they were not irrelevant, it is plain enough that the decision went upon the ground that the circumstances under which the publication was made removed the presumption of malice. The argument of the learned counsel for the plaintiff assumes that the privilege does not exist if the reference to the plaintiff was not germane to the subject of the inquiry. If it be conceded that the reference to the plaintiff was unnecessary and irrelevant, yet it was published on an occasion and under circumstances that rendered the whole paper *prima facie* privileged, and even a statement not strictly relevant, in the view of this court, is not actionable except upon proof of actual malice. And the mere publication of the paper on the occasion and under the circumstances described did not prove that fact. Moreover it is not quite clear that the statement was irrelevant, and so known and understood by the parties. The application of Judge DANIELS called for all the facts and as full a statement as he could get, and in response to that the defendant might properly state the manner of the defalcation, and the persons who were supposed to have aided in it without responsibility except upon proof of express malice. The answer alleged that there was a prior defalcation known to defendant and not disclosed to the sureties; an allegation which called for a full statement as to the manner in which the funds were abstracted, and that fact concealed. And, certainly, the reference to the plaintiff in this paper was as relevant and pertinent to the general subject as was that designating the plaintiff as one who had "robbed and swindled" contained in the paper in *Klinck* v. *Colby* (*supra*). In such cases it is the actual malicious intent, and not the strong or irrelevant words that constitutes the libel, and in this case such intent was not established. The

inference arising from the circumstances was sufficient to repel all presumptions of malice, and, therefore, the burden was put upon the plaintiff to show that it existed in fact. The learned counsel for the plaintiff may possibly be correct in his position, that the defendant could have transacted its business with Judge DANIELS and its own attorneys without making any such reference to the plaintiff as it did, but that circumstance is of no importance except in support of an allegation of express malice. In the language of Judge SELDEN, in *Lewis* v. *Chapman (supra)*, " All that is necessary to entitle such communications to be regarded as privileged is that the relation of the parties should be such as to afford reasonable ground for supposing an innocent motive for giving the information, and to deprive the act of an appearance of officious intermeddling with the affairs of others." It has been held that no action lies against a party who, in the course of a legal proceeding, makes an affidavit in support of a summons taken out in such cause which is scandalous, false and malicious, though the person scandalized, and who complained, was not a party to the cause. (*Henderson* v. *Broomhead*, 4 H. & N. 569.)

There is no good reason for limiting or weakening the rule of privilege applicable to publications made by one to another in regard to matters of business in which both are interested. Whenever such occasions are used as a cover to gratify personal spite, by intentionally or wantonly assailing personal reputation, ample redress can always be given to the injured party upon proof that the publication was actually inspired by malicious motives, and this is sufficient for every purpose of justice. The General Term was correct in holding that the matter was privileged, and its judgment should be affirmed.

All concur with ANDREWS, J., except EARL and O'BRIEN, JJ., dissenting.

Judgment reversed.