KING v. McKISSICK.

(Circuit Court, D. Nevada. December 7, 1903.)

No. 763.

1. LIBEL—JUDICIAL PROCEEDINGS—STATEMENTS—PRIVILEGE—IRRELEVANT AL-LEGATIONS.

Defendant filed an application to perpetuate testimony to be used to rebut alleged fraudulent claims against an executor's settlement of the estate of a deceased person, and alleged in her application that the parties were asserting a claim against the estate "through the false, fraudulent, and malicious representations" of plaintiff, who was an attorney. Held, that the reference to plaintiff in such application was immaterial and irrelevant to the issues in the application, and was not, therefore, a privileged communication.

2. SAME—COMPLAINT.

In an action for libel, a complaint alleging that defendant in an application to perpetuate certain testimony alleged that the claims sought to be rebutted by the testimony were asserted through the false, fraudulent, and malicious representations of plaintiff, who was an attorney in good standing, and that defendant caused copies of her said petition to be published in a newspaper printed in the county where plaintiff resided, was not demurrable for want of facts.

3. SAME.

In an action for libel alleged to have been contained in an application filed by defendant to perpetuate testimony, the complaint was not objectionable because it contained an additional allegation that defendant published a copy of her petition in a newspaper; evidence of such publication being admissible without the allegation to show malice.

## On Demurrer to Complaint.

This is an action to recover damages for an alleged libelous publication. The substance of the allegations in the complaint is that plaintiff is an attorney at law in active practice, and has conducted and demeaned himself in his profession with fidelity, and that he is an honest, truthful, and law-abiding citizen; that the defendant, who is the widow of B. H. McKissick, deceased, on April 30, 1903, in the district court of Washoe county, filed a verified petition upon which she made an application in the matter of the estate of said deceased for the perpetuation of the testimony of T. V. Julien, from which it appears that B. H. McKissick died intestate on the 24th day of February, 1903, leaving petitioner and three minor children surviving him; that petitioner is the widow of said B. H. McKissick, and the mother of the minor children. It also appears that B. H. McKissick, deceased, was a nephew of, and a residuary devisee under the will of, Jacob McKissick, deceased; that on the 22d day of September, 1900, the said Jacob McKissick died testate in Reno, Nev., leaving an estate consisting of real and personal property; that on the 2d day of October, 1900, the will of Jacob McKissick, deceased, with a petition for its probate, was filed, and, under proceedings therein taken, on the 18th day of October the court, by its decree, admitted the will to probate as the last will and testament of Jacob McKissick, deceased, and appointed the said B. H. McKissick, now deceased, the executor thereof; that thereafter the said B. H. McKissick qualified as such executor, and fully discharged the duties of his trust, and, under proceedings, the court, by its decree, distributed to B. H. McKissick, deceased, all of the estate of Jacob McKissick, deceased, that should remain after the payment of certain legacies, and was discharged of his trust, the same being fully administered. And the petitioner, upon information and belief alleges, "that your petitioner, as an heir at law and as administratrix of the estate of B. H. McKissick, deceased, is now threatened with a suit by Jonathan J. McKissick; * * * that said named parties, through the false, fraudulent, and malicious representations of one F. D. King, now claim and assert some claim to the property distributed to

B. H. McKissick, deceased, by the said Second Judicial District Court in the matter of the estate of Jacob McKissick, deceased; that said claim or claims made by the parties are false and fraudulent and without right, and are made and urged for the sole purpose of annoying and harassing your petitioner, and to extort money from the heirs of B. H. McKissick, deceased; that said action, if brought, will be brought against your petitioner and her said minor children by the above-named claimants, and by others whose names are at present unknown to your petitioner, upon the said false and fraudulent claim or claims as aforesaid, and will involve the title to all the property devised to the said B. H. McKissick, deceased, by the said Jacob McKissick, deceased, the said property being situated in this state and in the state of California, and now belongs to your petitioner and her said minor children as heirs at law of the said B. H. McKissick, deceased." The complaint further alleges that afterwards, on the 2d day of May, 1903, the defendant, by and through her attorney, James T. Boyd, caused to be published in the Daily Nevada State Journal, a daily newspaper printed and published in the city of Reno, county of Washoe, state of Nevada, a false and malicious libel of and concerning the plaintiff, as follows, to wit: The heading of this article is, "Important Order Made—District Court Takes Interesting Action in McKissick Estate;" and then it virtually copies that portion of the petition of Mrs. McKissick which alleges that the claims were asserted "through the false, fraudulent, and malicious representations of one F. D. King," as above set forth; "and that said matters are false and defamatory, and were wholly irrelevant and improper, impertinent and immaterial to be alleged in said petition or to be published in said paper, and were improper, false, and malicious, and were inserted, written, and put in said petition and published in said newspaper, without reasonable or probable cause, and with the intent on the part of said defendant to defame the said plaintiff." It is further alleged that by reason of the said false and defamatory allegations set forth in said petition, and the false and defamatory publication, the plaintiff has been damaged in the sum of $25,000. To this complaint the defendant interposed a demurrer on three grounds: (1) That the complaint is uncertain and ambiguous, in that it cannot be determined therefrom whether the alleged libel was against plaintiff in his capacity as an attorney at law, or against him as a private citizen; (2) that it cannot be ascertained whether plaintiff sues for the injury or damage by the filing of the petition in court on April 30, 1903, or for the injury and damage done him by the publication in the Nevada State Journal on May 2d; (3) that the complaint does not state facts sufficient to constitute a cause of action.

Alfred Chartz, for plaintiff.

James T. Boyd and Torreyson & Summerfield, for defendant.

HAWLEY, District Judge (orally). The third count of the demurrer goes directly to the substance of the complaint, and will be first considered. The contention of defendant is that both publications were absolutely privileged; that no action can be maintained for defamatory statements made in the course of a judicial proceeding before a court of competent jurisdiction. Such is the general rule in England, but the courts in the United States have generally held that the English rule has been, and ought to be, qualified, so that statements, verbal or written, which are made in the course of judicial proceedings, in order to be privileged, must at least be pertinent and material to the case. All that was necessary to allege in the petition to secure an order to have the testimony of Mr. Julien perpetuated was the fact that Jonathan J. McKissick and others named in the petition were asserting some claim to the property without right, or in fraud of the rights of the petitioner herein, or of some irregularity and fraud in distributing the property of Jacob

McKissick, deceased. The testimony which it is claimed would be given by Julien had reference solely to the fairness and regularity of the proceedings in the settlement of the estate of Jacob McKissick, deceased. It had no relation whatever to any fraudulent representation made by King or any other outside party. The charge that the parties were asserting a claim to the estate "through the false, fraudulent, and malicious representations of one F. D. King" was wholly irrelevant and immaterial to the proceedings; and, if suits were brought upon the alleged claims, the issue would not be as to any misrepresentations made to them by others, but whether they had any legal grounds to show that fraud had been committed in the settlement of the estate. The reference to F. D. King, as made in the petition, cannot be considered as having any such material or sufficient relevancy to the issues in the petition as to make it a privileged communication.

In Moore v. M. N. Bank, 123 N. Y. 420, 427, 25 N. E. 1048, 11 L. R. A. 753, the bank had brought suit against its cashier upon his bond, and in that suit alleged that the funds of the bank had been misappropriated "by collusion with the teller." The teller was not a party to the bond or to the suit, and there was no issue which called for an investigation of the teller's conduct. The court held that the reference to the teller was not a privileged communication, but was prima facie libelous.

In Mutual Life Insurance Co. v. Thomas, 83 Fed. 803, 28 C. C. A. 96, it appeared that the insurance company, in an answer to an action brought against it by Mrs. Martin to recover upon a policy of insurance issued by the company upon the life of her husband, denied the death of the insured, and, as an affirmative defense, alleged that Mrs. Martin and her attorneys had entered into an agreement and conspiracy to defraud the defendant, and that said plaintiff and her attorneys "have no knowledge or information whatsoever of the death of said Jonas Martin, but have alleged that the said Jonas Martin is dead for the sole purpose of carrying out the agreement, conspiracy, and fraud hereinbefore set out." Jesse Thomas, who brought the action to recover damages, was one of the attorneys for the plaintiff in the suit of Mrs. Martin against the insurance company; and the court, after stating the general rule, and citing authorities in its support, said that:

"The matter alleged by the insurance company in its answer to the suit of Johanna Martin was not privileged. The issue in the action was whether or not the insurance company was liable upon the policy. Its defense was that the insured was still living. Instead of relying upon that defense, it attempted to asperse the character of the attorneys who were conducting the suit by charging them with libelous matter, which, if true, added in no way to the force of its allegation that the event upon which alone its liability was to attach had not occurred, to wit, the death of the insured. The matter so alleged was not pertinent to the issues in the case."

The complaint in the other particulars specified in the demurrer might readily be made more specific and certain, but I am not prepared to say that it does not state facts sufficient to constitute a cause of action. It is true that the complaint does not directly

charge that the libel was published of or concerning the plaintiff in his capacity as an attorney at law, but it is certainly susceptible of that interpretation, and such is evidently its true intent and meaning.

It was proper, but perhaps unnecessary, to insert in the complaint any reference to the publication made in the Nevada State Journal on May 2, 1903. That publication, if proof be made of the attorney's authority in the premises, would be admissible as evidence to show malice on the part of the defendant in the publication made April 30, 1903, or in aggravation of damages; it being, in substance, a mere recital of the charges made in the petition. Townshend on Slander & Libel (2d Ed.) §§ 392, 394. At section 394 the author says:

"A plaintiff may, to prove malice, give evidence of a publication by the defendant made subsequently to the publication declared upon, when the subsequent publication is of a like import with that declared upon or relating thereto, or is not actionable of itself, or explains any ambiguity in the matter declared upon."

The rule would be different if it were a libel based on different grounds, for which special and additional damages were claimed.
The demurrer is overruled.