OPINION OF THE COURT
Karla Moskowitz, J.
Motions bearing sequence numbers 001 and 002 are consolidated for disposition.
Attorneys, former adversaries in a Surrogate’s Court proceeding, are litigants in this action for compensatory and punitive damages based on the alleged wrongful use of a TRW credit profile report in the probate action.
In motion 001, defendant Edwin S. Shapiro moves, pursuant to CPLR 3211 (b), to strike plaintiff’s reply to Shapiro’s counterclaim. Plaintiff cross-moves for summary judgment against Shapiro pursuant to CPLR 3212.
In motion 002, plaintiff moves, pursuant to CPLR 3124 and 3126, to compel defendant TRW, Inc. (TRW) to produce all documents requested in the plaintiff’s notice for discovery and inspection or to strike TRW’s answer or resolving the issues on which documents have not been produced in plaintiff’s favor or to bar TRW from submitting evidence in support of its defenses.
Defendant TRW cross-moves for summary judgment to dismiss plaintiff’s complaint against it.
Plaintiff instituted this action to recover under the Federal Fair Credit Reporting Act (15 USC § 1681n) and the New York *461 Fair Credit Reporting Act (General Business Law, art 25, §§ 380 — 380-j). He relies on defendant Shapiro’s alleged improper procurement of plaintiff’s consumer credit profile report from TRW and use of it in a Surrogate’s Court action in which plaintiff was the attorney for the coexecutrices of the estate of Marcia M. Besaine. Plaintiff alleges that defendants employed the TRW consumer credit report in the probate action to impugn his personal and professional reputation in violation of the statutorily authorized purposes of credit reports. Plaintiff contends defendants ignored — either with actual malice or in reckless disregard of their duty to know — the prohibitions in both the Federal and New York acts against use of a consumer credit report in a judicial proceeding.
Plaintiff also alleges defendants Shapiro and Tobias defamed him by republishing the TRW report, describing his behavior as atrocious and implying he is a liar in a legal brief filed in the Appellate Division, Second Department, in the appeal from the Surrogate’s Court determination. Plaintiff maintains defendants intended to discredit his professional reputation.
Further, plaintiff claims defendant TRW had reasonable grounds to believe that plaintiff’s credit profile report would not be used for a purpose permitted by statute and/or that TRW negligently violated its statutory duty to ascertain the report’s intended use.
DEFENDANT SHAPIRO’S MOTION TO STRIKE PLAINTIFF’S REPLY
In his answer, Shapiro interposes several affirmative defenses and a counterclaim alleging that plaintiff maliciously published false and defamatory statements that were irrelevant to the Surrogate’s Court proceeding.
In his reply to the counterclaim, plaintiff asserts seven affirmative defenses that Shapiro moves to strike on the ground that they are not stated in accordance with CPLR 3013 and do not state any valid causes of action.
This is a forum where the rules of pleading are liberal and pleadings are expansively construed. (See, e.g., CPLR 3026.) Disposition of actions on their merits is strongly encouraged.
The proper inquiry on a motion to strike defenses is *462 whether the party actually has a defense, not whether it is properly stated or artfully pleaded. (Becker v Elm Air Conditioning Corp., 143 AD2d 965, 966.) The pleader is entitled to the benefit of every reasonable intendment of the defenses and, if there is any doubt as to the availability of a defense, it should not be dismissed. (Duboff v Board of Higher Educ., 34 AD2d 824.) Statements of legal conclusion, even if inconsistent, are permissible. (River House Realty Co. v Lico Contr., 172 AD2d 426; CPLR 3013, 3014, 3026.)
On the face of the pleading, plaintiff’s affirmative defenses are sufficiently stated and viable. If defendant desires additional information, he is free to serve a notice for a bill of particulars identifying the issues on which he seeks amplification.
Therefore the motion to strike the reply is denied.
THE SUMMARY JUDGMENT MOTION AND CROSS MOTION AND DISCOVERY MOTION
THE FAIR CREDIT REPORTING ACT
The Federal Fair Credit Reporting Act (FCRA) and the complementary provisions in the New York General Business Law restrict the purposes for which consumer reports may be used "for the simple reason that such reports may contain sensitive information about consumers that can easily be misused.” (St. Paul Guardian Ins. Co. v Johnson, 884 F2d 881, 884 [5th Cir 1989].) The legislative history reveals that the Federal statutes were "crafted to 'protect an individual from inaccurate or arbitrary information. . . in a consumer report’ ”. (Supra, at 883, quoting Pinner v Schmidt, 805 F2d 1258, 1261 [5th Cir 1986], cert denied 483 US 1022.)
The focus of the FCRA is the credit reporting agency, and the confidentiality and accuracy of the information it collects on the consumer. (See, Zeller v Sarnia, 758 F Supp 775, 780 [Mass 1991].) Both Federal and State statutes are structured to ensure that once a consumer reporting agency maintains data on a person’s credit history, the information would not only be accurate but would only be released for the express purposes set forth in 15 USC § 1681b or General Business Law § 380-b, and would be consistent with the policy underlying these acts: to protect consumers in their individual capacities from unscrupulous use of credit reports. The statutes also provide for the use and dissemination of the credit informa *463 tian after it is corrected and impose penalties for noncompliance.
LIABILITY OF TRW
TRW asserts that it furnished the consumer credit profile report to a legitimate subscriber, not to either defendant Shapiro or Tobias. TRW states that the subscriber agreement entered into with its legitimate client mandates that the client employ the credit report only for those purposes identified as permissible under law and only in connection with a credit transaction. To ensure compliance, TRW asserts that it conducts precautionary and investigative activities on the client and its use of the credit reports. In this case, TRW states that its investigations indicated that the credit reports were always furnished to its client for permissible purposes.
15 USC § 1681b provides that a consumer reporting agency may furnish reports only in specific circumstances. Under 15 USC § 1681b (3) (E), a consumer reporting agency like TRW can furnish reports to individuals or entities it has reason to believe have a legitimate business need for the information in connection with a business transaction involving the consumer. (See, Alexander v Moore & Assocs., 553 F Supp 948, 954 [Haw 1982].) The primary business purpose of a subscriber of a credit reporting agency and the subscriber’s certification to the agency constitute the reporting agency’s "reason to believe” that the subscriber has a legitimate business need for the credit profile report requested. (Boothe v TRW Credit Data, 557 F Supp 66, 71 [SD NY 1982].) In requiring subscribers to certify the purpose for the reports in advance, "TRW reasonably strikes a balance between the conflicting goals of protecting the privacy rights of consumers and promoting an efficient credit economy” (supra, at 71). As a matter of policy, it is impractical to require that TRW verify the purpose of each report and insure its use only for that purpose (see, supra).
TRW has sufficiently demonstrated the efficacy of its procedures to ensure compliance with the acts. (Cf., Pinner v Schmidt, 805 F2d 1258, 1262, supra.) Indeed, TRW’s subscriber disclaims any responsibility for the dissemination of plaintiff’s credit profile, stating that it has no client by plaintiff’s name and that it never authorized preparation of a credit report on plaintiff. That TRW issued the report in response to a seemingly legitimate request is insufficient to impose liability on *464 TRW for an unauthorized and improper request by an otherwise legitimate subscriber who certified that credit reports would only be obtained for permissible purposes. (Boothe v TRW Credit Data, supra, at 70-71; Alexander v Moore & Assocs., supra; Hansen v Morgan, 582 F2d 1214, 1219 [9th Cir 1978].) Rather, it is the user of the consumer credit profile report who is cast in liability for obtaining the report under false pretenses and using it for an impermissible purpose. (Zeller v Samia, 758 F Supp 775, 781, supra; Zamora v Valley Fed. Sav. & Loan Assn., 811 F2d 1368, 1370 [10th Cir 1987].)
Neither the Federal Fair Credit Reporting Act nor the corresponding New York Act imposes a duty upon the credit reporting agency to insure the proper use of the credit profile. The duty imposed on TRW is to maintain accurate reports and to release the reports to users who demonstrate a legitimate and statutorily authorized need. Plaintiff has failed to demonstrate any act by TRW either by commission or omission involving the release of plaintiff’s credit profile report to a seemingly legitimate subscriber or in its security procedures that would subject it to liability. Therefore, TRW’s cross motion for summary judgment dismissing the complaint as against it is granted.
plaintiff’s discovery motion
Plaintiff’s motion to compel TRW to produce documents is denied as moot.
shapiro’s liability
The Federal Fair Credit Reporting Act and the companion provisions of the New York State General Business Law provide for liability and criminal penalties for failing to comply with the statutory provisions. Under 15 USC §§ 1681n and 1681o and General Business Law §§ 380-l and 380-m, respectively, consumer reporting agencies and users are liable for willful or negligent noncompliance. (See, Comeaux v Brown & Williamson Tobacco Co., 915 F2d 1264, 1273 [9th Cir 1990].) 15 USC § 1681q and General Business Law § 380-o impose criminal penalties for knowingly and willfully obtaining information on a consumer from a consumer reporting agency under false pretenses. "Noncompliance with § 1681q* * * * *465 forms a basis of civil liability under § 1681n.” (Hansen v Morgan, 582 F2d 1214, 1221 [9th Cir 1978], supra; Comeaux v Brown & Williamson Tobacco Co., supra, at 1273; Yohay v City of Alexandria Employees Credit Union, 827 F2d 967, 972 [4th Cir 1987].)
Under this provision, if the consumer reporting agency complies with the statute, as established here, it can only issue a report for one of the purposes enumerated in 15 USC § 1681b. Thus, a "user cannot utilize an account with a consumer reporting agency to obtain consumer information for a purpose not permitted by 1681b without using a false pretense.” (Hansen v Morgan, supra, at 1219; Zeller v Sarnia, 758 F Supp 775, 780, supra; Zamora v Valley Fed. Sav. & Loan Assn., 811 F2d 1368, 1378, supra.) A user of a consumer credit report who obtains the report for an impermissible purpose is deemed to have employed false pretenses to obtain the report (Hansen v Morgan, supra; Zeller v Samia, supra), and has violated the criminal provision set forth in 15 USC § 1681q. This violation forms the predicate for civil liability and recovery under 15 USC § 1681n (see, Hansen v Morgan, supra), and General Business Law § 380-l.
Here, the consumer credit report on plaintiff was not used for a credit, licensing, employment or insurance purpose. Nor was it produced pursuant to court order. (15 USC § 1681b [1], [2], [3] [A]-[E]; General Business Law § 380-b [a] [1], [2], [3].)
Defendant Shapiro denies he had any role in obtaining the credit report and asserts that he only acted as the attorney for the individual who submitted the credit report with an affidavit to the court. However, it is undisputed that Shapiro prepared the papers filed in Surrogate’s Court and submitted the credit report in an alleged attempt to impugn plaintiff’s credibility. Thus, Shapiro can be considered a "user” of the credit report within the purview of both the Federal and State statutes (see, Hansen v Morgan, supra, at 1216; Boothe v TRW Credit Data, supra, at 70; Comeaux v Brown & Williamson Tobacco Co., supra).
As this use of the credit report was patently improper under both 15 USC § 1681b and General Business Law § 380-b, the report could only have been obtained under false pretenses. (Hansen v Morgan, supra; St. Paul Guardian Ins. Co. v John *466 son, supra; Comeaux v Brown & Williamson Tobacco Co., supra.)
Shapiro defends his actions by arguing that plaintiffs prior malicious publication of confidential and irrelevant credit information and defamatory statements about his client, codefendant Tobias, engendered Shapiro’s response. He claims the response is reasonable under the circumstances. Shapiro asserts that the statements in both his and his client’s affidavits are true and made without malice in response to plaintiffs irrelevant and defamatory charges.
While it is true that absolute privilege shields statements made in the course of judicial proceedings, the privilege only attaches to statements a reasonable person could find relevant and pertinent to the action. (Dachowitz v Kranis, 61 AD2d 783, 785, mot to dismiss denied 47 NY2d 773; Martirano v Frost, 25 NY2d 505, 509.) The judicial forum is not an arena for the display of personal antagonism between attorneys.
The proper administration of justice requires that counsel be uninhibited in speaking freely to safeguard the client’s interests. (Baratta v Hubbard, 136 AD2d 467, 469.) However, this privilege "is not a license which protects every slanderous publication or statement made in the course of judicial proceedings.” (Moore v Manufacturers’ Natl. Bank, 123 NY 420, 426.) " 'If counsel through an excess of zeal to serve their clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as not to admit to discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences. In other words, if the privilege is abused, protection is withdrawn.’ ” (Halperin v Salvan, 117 AD2d 544, 548, quoting Youmans v Smith, 153 NY 214, 220.)
Whether statements and writings are pertinent, the court gives the words a liberal construction, resolving any doubt in favor of upholding the privilege. (Seltzer v Fields, 20 AD2d 60, 62-63, affd 14 NY2d 624; Baratta v Hubbard, 136 AD2d 467, 469, supra.)
Pursuant to these principles, there is no rational basis or relevance in submitting to a court a credit report on an attorney representing a party to the action. The attorney’s financial history cannot have any conceivable bearing on the disposition of the Surrogate’s Court proceeding. It is so "outrageously out of context as to permit one to conclude, from the *467 mere fact [that the report was submitted], that it was motivated by no other desire than to defame.” (Martirano v Frost, 25 NY2d, supra, at 508.)
It is clear that Shapiro and his client crossed the line and engaged in a personal attack on plaintiff. That defendant deemed this "mud-slinging” an appropriate response to what he perceived as plaintiffs deplorable posturing cannot validate the improper use of the credit report or shield defendant from liability.
Defendant’s contention that plaintiffs defamation claim is barred by the Statute of Limitations is incorrect. Once the credit report was "republished” in the brief submitted to the Appellate Division, the statute commenced anew. (Rinaldi v Viking Penguin, 73 AD2d 43, affd 52 NY2d 422.)
In view of the foregoing, plaintiff has established his right to recovery as a matter of law. Defendant has failed to produce evidentiary proof to raise any material questions of fact sufficient to defeat summary judgment against him.
Accordingly, the cross motion seeking summary judgment against defendant Shapiro is granted and that branch of the complaint is severed and ordered to be set down for an assessment of damages and costs. Movant is directed to serve a copy of this decision and order on the Trial Support office together with a note of issue and payment of appropriate fees. The action is dismissed against TRW, the caption is deemed amended accordingly and clerk is directed to enter partial judgment pursuant to this order.

 15 USC § 1681q provides: "Any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under *465 false pretenses shall be fined not more than $5,000 or imprisoned not more than one year, or both.”