JOSEPH S. LESSER, Respondent, *v.* INTERNATIONAL TRUST COMPANY and Others, Appellants.

First Department, November 17, 1916.

Libel — charges made in petition in bankruptcy proceeding — privilege — statements made in legal proceedings — pertinency and materiality of statements — words falsely stating that plaintiff was fugitive from justice — compensatory damages — verdict for six cents.

Statements contained in a petition in bankruptcy setting out alleged facts constituting an alleged conspiracy between the plaintiff and others to obtain moneys by false pretenses and frauds relating to the purchase of merchandise and by fraudulent bankruptcy proceedings to be thereafter instituted are privileged and cannot be made the basis of an action for libel where the words are material and pertinent to the questions involved in the bankruptcy proceeding, and this irrespective of the motive with which they are used. But such privilege does not extend to matters having no materiality or pertinency to the questions involved in the bankruptcy proceedings.

Thus a libel may be founded upon the charge that the plaintiff was a fugitive from justice when such was not the fact.

The fact that a District Court struck out the alleged libelous words as not sufficient to constitute an act of bankruptcy does not deprive them of their privilege. If they were pertinent to the proceeding, the fact that they were insufficiently alleged makes no difference.

Where the court has charged that the jury may fix compensatory damages and they render a verdict for six cents, the only charge not privileged being that the plaintiff was a fugitive from justice, it was error for the trial court to set aside the verdict as inadequate, for the amount of damages in libel actions is peculiarly within the province of the jury.

APPEAL by the defendants, International Trust Company and others, from an order of the Supreme Court, made at the New York Trial Term and entered in the office of the clerk of the county of New York on the 15th day of April, 1915, setting aside the verdict of a jury in favor of the plaintiff for six cents and granting a new trial on the ground of the insufficiency of the damages.

*Julien T. Davies* [*Harold R. Medina* with him on the brief], for the appellants International Trust Company and others.

*Henry A. Wise* [*Walter H. Pollak* and *Saul S. Myers* with him on the brief], for the appellant George W. Whiteside.

*Martin Conboy* [*Joseph F. Collins* with him on the brief], for the respondent.

PAGE, J.:

The action is for damages claimed to have been sustained by the plaintiff as the result of an alleged libel published by the defendant in an amended petition in bankruptcy in *Matter of M. G. Samuels & Co.*, which was a proceeding pending in the United States District Court for the Southern District of New York. The defendants are the three petitioning creditors and their attorney. The alleged libel is as follows:

"Within four months next immediately preceding the filing of the said petition in bankruptcy and while insolvent as aforesaid, the said alleged bankrupt transferred and concealed and permitted to be concealed and removed certain parts of its property, with intent to hinder, delay and defraud its creditors in manner following that is to say:

"In the month of April, 1911, and while insolvent as aforesaid, the said alleged bankrupt was insolvent within the meaning and intent of the National Bankruptcy Act of 1898 and the acts amendatory thereof, and Morris G. Samuels, the president and controlling factor of the said alleged bankrupt, entered into a conspiracy with Joseph S. Lesser of the City, County and State of New York, but now a fugitive from justice and at present, as your petitioners have been informed and believe, at St. Gall, Switzerland, and with Morris Lesser, of the City, County and State of New York, a brother of the said

Joseph S. Lesser, and with Solon H. Newmark, of the City, County and State of New York, and with Isaac Gerstein, of the City, County and State of New York, the Vice-president, President and Treasurer respectively of the St. Gallen Manufacturing Company, a domestic corporation against whom a petition for the involuntary bankruptcy was filed in this Court on October 14th, 1911, as follows: The said conspirators did conspire, combine, confederate and agree together among themselves to extensively purchase laces and embroideries in various parts of Europe to the extent of $500,000 or thereabouts, on credit, in the name of the said St. Gallen Manufacturing Company; to have the said Joseph S. Lesser purchase the said merchandise in Europe on credit as the representative of the said St. Gallen Manufacturing Company; to have the said alleged bankrupt and Morris G. Samuels, as president, advance whatever sums of money may be necessary to carry out the said conspiracy; to have the said alleged bankrupt, and Morris G. Samuels, president, receive a so-called factor's lien of all the merchandise of the said St. Gallen Manufacturing Company which should be received pursuant to the said conspiracy; to have a fraudulent bankruptcy and then when the creditors of the St. Gallen Manufacturing Company would seek to enforce payment of their claims to assert and maintain that all of the merchandise and accounts receivable of the St. Gallen Manufacturing Company were the property of the said alleged bankrupt, and of said Morris G. Samuels and then after the termination of the said fraudulent bankruptcy proceedings against the said St. Gallen Manufacturing Company to divide the spoils among the conspirators. At the time of the formation of the said conspiracy in or about the month of April, 1911, not only was [*sic*] the said alleged bankrupt and the said Samuels insolvent within the meaning and intent of the said National Bankruptcy Act, but the said St. Gallen Manufacturing Company and the said Joseph S. Lesser and the said Morris Lesser and the said Solon H. Newmark, and the said Isaac Gerstein, were each and every one of them insolvent within the meaning and intent of the said National Bankruptcy Act, and pursuant to the said conspiracy the said alleged bankrupt and the said Morris G. Samuels paid over to the said Joseph S. Lesser, Morris Lesser,

Solon H. Newmark and Isaac Gerstein, large sums of money obtained by the larcenies and the uttering of forged paper as hereinbefore more fully stated, to wit: a sum in excess of $33,000, and pursuant to the said conspiracy all of the said money was forwarded by the said St. Gallen Manufacturing Company and its said officers to the said Joseph S. Lesser at St. Gall, Switzerland, and pursuant to the said conspiracy the said Joseph S. Lesser purchased large quantities of merchandise on the credit of the alleged good name of the St. Gallen Manufacturing Company, to wit: upwards of $100,000. After the receipt of the said sum of $33,000 from the said alleged bankrupt and the said Morris G. Samuels, the said Joseph S. Lesser, endeavoring to cheat and defraud not only the creditors of the said alleged bankrupt and of the said St. Gallen Manufacturing Company, but also endeavoring to cheat and defraud two of the said conspirators, to wit: the said Morris G. Samuels and the said Isaac Gerstein entered into an agreement or arrangement with the said Morris Lesser and the said Solon H. Newmark wherein and whereby it was agreed that the said Joseph S. Lesser should, instead of sending the merchandise so purchased on credit of the St. Gallen Manufacturing Company in the City of New York, keep the said merchandise at St. Gall, Switzerland, under the name of Lesser Bros., an alleged independent business concern, which in reality was the agent and dummy of the said St. Gallen Manufacturing Company, so that at the time of the bankruptcy of the said St. Gallen Manufacturing Company — planned, anticipated and inevitable — the merchandise so purchased from different business houses, instead of being under the control of five conspirators as aforesaid, should be under the sole control of the three of the said conspirators, to wit, the said Joseph S. Lesser, the said Morris Lesser, and the said Solon H. Newmark, and the said Joseph S. Lesser, now has at St. Gall, Switzerland, as the proceeds of the said conspiracy, merchandise purchased with the moneys of the alleged bankrupt in this proceeding of the value of upwards of $100,000, and the said Morris Lesser and the said Solon H. Newmark and the said Joseph S. Lesser are now concealing the said property from the estate in bankruptcy herein."

These statements having been made in a petition in a judicial proceeding, defendants claim that they are privileged. The English rule is that the pleadings and affidavits in the course of a judicial proceeding before a court of competent jurisdiction are absolutely privileged, and no action lies therefor, however false or malicious may be the statements. The American rule is not so broad. (Newell Sland. & Lib. [3d ed.] 558.) The rule to be applied in this State has been very clearly stated by Judge VANN in the case of *Youmans* v. *Smith* (153 N. Y. 214, 219): "The law governing the privilege of parties and their counsel, so far as applicable to the case in hand, was well stated by Judge GROVER in *Marsh* v. *Ellsworth* (50 N. Y. 309, 311), as follows: 'A counsel or party conducting judicial proceedings is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved;  *  *  * within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter, having no materiality or pertinency to such questions.' (*Gilbert* v. *People*, 1 Denio, 41; *Hastings* v. *Lusk*, 22 Wend. 410; *Ring* v. *Wheeler*, 7 Cow. 725.) In applying this principle the courts are liberal, even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceeding that may possibly be pertinent, they will not so regard it as to deprive its author of his privilege, because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisers to the constant fear of suits for libel or slander. (*Hastings* v. *Lusk, supra ; Warner* v. *Paine*, 2 Sandf. 195, 201; *Brook* v. *Montague*, Cro. Jac. 90; *Hodgson* v. *Scarlett*, 1 B. & Ald. 232; *Missouri Pacific R. Co.* v. *Richmond*, 4 L. R. A. 280, note;* Cooke's Law of Defamation, 63.) Any other rule would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires. If counsel through an excess of zeal to serve their

* See 73 Tex. 568. — [REP.

clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences.    In other words, if the privilege is abused, protection is withdrawn."

The defendants were strangers to the plaintiff and did not know him.    The facts set forth in the amended petition had been obtained by Whiteside in the course of his investigation into the affairs of the bankrupt and from statements made to him by Isaac Gerstein and M. G. Samuels, and all of the statements contained in the alleged libelous article, except that which states that the plaintiff was a fugitive from justice, would seem to be pertinent to the subject-matter of the litigation.    It was stricken out of the amended petition by order of the District Court.    The judge struck out the words from the proposed order as "irrelevant, impertinent and scandalous," thus holding that it was stricken out upon the ground that the facts alleged were not sufficient to constitute an act of bankruptcy.    This did not deprive them of their privilege.    If they were pertinent the fact that they were insufficiently alleged makes no difference.    (*Dada* v. *Piper*, 41 Hun, 254, 256.)

The statement that the plaintiff was a fugitive from justice was not pertinent in any way to the subject-matter, and hence did not come within the privilege.    This was shown not to be true, although there was an investigation before the grand jury and plaintiff's brother was indicted.    It was not shown that the plaintiff had any knowledge thereof, or that he had departed from the jurisdiction with the intention of avoiding prosecution.    This would justify the submission of the case to the jury.

The plaintiff, on cross-examination, was examined as to several bankruptcy proceedings against corporations which he controlled and various transactions in which he participated. The jury also had the plaintiff before them and decided that six cents was the compensatory verdict.    The amount of damages in an action of libel is peculiarly within the province of

the jury. (*Holmes* v. *Jones*, 147 N. Y. 59, 67.) There was no exception presented to us upon the admission or rejection of testimony, nor was there any exception taken to the judge's charge by the plaintiff, and the motion to set aside the verdict was limited to inadequacy of damages. The court had charged the jury that if they should determine that there should be any recovery in this case in the nature of compensatory damages they could then fix those compensatory damages at an amount which in their opinion is a proper compensation for the injury done, and that the amount may be anything from six cents up, to which the plaintiff took no exception nor did he ask the court to charge that the jury could bring in a verdict only for substantial damages.

The order setting aside the verdict should be reversed and the verdict reinstated, with costs to the appellant.

CLARKE, P. J., McLAUGHLIN, LAUGHLIN and DOWLING, JJ. concurred.

Order reversed and verdict reinstated, with costs to appellant.