RUSCIANO & SON CORP. and ANTHONY J. RUSCIANO, Plaintiffs, *v.* MICHAEL MIHALYFI, Defendant.

Supreme Court, Trial Term, Bronx County, January 17, 1938.

*Murray Levine,* for the plaintiffs.

*Hyacinthe Ringrose* [*Sidney Rosenzweig* of counsel], for the defendant.

COLLINS, J. This non-jury action is for libel. The plaintiffs are a contracting corporation and its president. The defendant was formerly employed by the corporate plaintiff as a civil engineer. Originally a separate action was commenced by each plaintiff, but they were consolidated. Admittedly, there were two publications of the libel. To the first publication the Statute of Limitations is urged as a defense, and to the second absolute privilege is advanced. Justification or excuse for the libel is not pleaded. Nor is the truth of the libelous matter asserted in exculpation.

The libel is in the form of a letter composed by the defendant and transmitted through the mail on or about March 3, 1936, to an engineer of the Port of New York Authority, for whom the corporate plaintiff was doing extensive work.

The dispatching and receipt of the letter constituted the first publication, and the republication occurred later, on May 25, 1937, when it was offered by the defendant here and received in evidence in another action in another court.

The letter follows:

" M. MIHALYFI
Structural Engineer
Hawthorne
New York

" *March 3, 1936.*

" Mr. EDW. W. STEARNS
Assistant Chief Engineer
Port of New York Authority
New York City

" My dear Mr. STEARNS: I feel that you should be more fully informed of the reasons and facts regarding my severed connections with Rusciano & Sons Corp., the Contractors on your Contr. No. HRB–23.

" About a year ago, Mr. Rusciano, Sr., whom I knew over 10 years, and who at that time was on the verge of bankruptcy, invited me to join him, so that we might try together for a comeback, with the promise ' if I make money, you make money.' I joined him and worked for his interest to such an extent, that in about one half year he got over a quarter of a million dollars worth of contracts, and not only was able to get out of the red, but enabled him to bid on your contract, all of which I had prepared for him under the above mentioned promise and a hunger drawing account.

" Shortly after your contract was approved, and as you know with my help awarded to him, he changed his attitude towards me, partially no doubt because I did not agree with his racketeering business methods, know too much about his kick-back, and partially

because he felt that having the contract signed up, he does not need me any more and can tell me now (to use their own expression towàrds everybody they deal with) — to go to Hell.

" I have earned his first open displeasure, when I objected to his suggestion of making up an unreasonable estimate for extra charges when a change in the design of the retaining wall on your job was necessitated. The final break came last week when he tried to persuade me to whisk a detail drawing through your office showing a certain size of steel beams for the support of the roadway at Amsterdam Ave., which from the specified loadings and gathered information, I could not justify, as I would not want to be in the engineer's shoes whose beams break down under a loaded trolley car with a dozen or so people killed.

" Inasmuch as none of the firm's members has any technical training (all their skill lies in falsifying P. W. A. payrolls, and cheating the job) I think it advisable for you to insist on a qualified superintendent, especially on the tunnel part of this job.

" I would also like to call your attention to the fact which you probably well know, that a good many of these illiterate racketeering contractors are getting away with murder, by hiring us unfortunate engineers at a hunger wage to figure their work, qualify for them, help them for instance to get a $350,000 contract that shows a $100,000 profit, and then either submit us to their racket, or have them tell us, that now we can go to Hell.

" Yours very truly,
' M. MIHALYFI."

The salient facts are not entangled in controversy. Indeed, the defendant offered no testimony, insisting that he should prevail on the law applicable to the undisputed facts.

The defendant here was the plaintiff in an action against the corporate plaintiff in Westchester county, to recover the sum of $8,065 balance for — quoting from the complaint in that action — " services to the defendant, at its request, as .a civil engineer, in forming, planning and preparing estimates and plans for certain constructive work relating to building various kinds of buildings, bridges, and roads, and in relation to certain excavations for buildings or other improvements, in the City of New York and vicinity."

The answer to that action was a general denial and payment. Thus, patently, the issues in that suit were the rendition of the services, the obligation to pay therefor, and the amount due and unpaid.

On the trial of that action the plaintiff there (the defendant here) offered the offending letter in evidence. The attorney for the defendant there (who likewise represents the plaintiffs here) did not object to the introduction of the letter, and it was received. But its relevancy or pertinency or materiality was not specifically passed upon. It would seem that reference to certain portions of the letter was made by counsel on both sides as well as by the trial judge in his charge. The jury rendered a verdict for the plaintiff for $500. This libel action followed.

That the letter is libelous *per se* is beyond debate. It charges the plaintiffs with " racketeering " business methods, with " kick-backs," with making an unreasonable estimate for extra charges, with attempting to persuade the defendant to design an unsafe roadway support which might " break down under a loaded trolley car with a dozen or so people killed." It accuses the individual plaintiff of a lack of technical training and of illiteracy. It charges the plaintiffs with falsification of P. W. A. payrolls and with cheating.

Thus, the publication charges the plaintiffs with criminality and exposes them to " public hatred, contempt, scorn, obloquy, or shame." (*Triggs* v. *Sun Printing & Pub. Assn.*, 179 N. Y. 144, 153.)

For this libel the corporate as well as the individual plaintiff is entitled to redress, unless, of course, the defenses possess validity. The rule is set forth in *Reporters' Assn.* v. *Sun Printing & Pub. Assn.* (186 N. Y. 437, 440), as follows: " That a corporation has the right to maintain an action for libel, when the publication assails its management, or credit, and inflicts injury upon its business, or property, is a proposition, which is true upon principle and which has the support of authority. (See Newell on Slander and Libel, p. 360 and cases cited.) It is as much entitled to the protection of the law, in those respects, as is the natural person. It differs from the latter, in that it has no character to be affected by a libel, but its right to be protected against false and malicious statements, affecting its credit, or property, should be beyond question."

When the letter was written and mailed the Statute of Limitations in libel actions was two years, but on April 8, 1936, the amendment reducing the period to one year became effective. (Civ. Prac. Act, § 51, subd. 3.) The amendment, therefore, required this action to be commenced by March 3, 1937, instead of by March 3, 1938. Actually the suit by the corporate plaintiff was commenced on May 25, 1937, and that by the individual plaintiff in October, 1937.

Since the first publication is seemingly barred (*Acker* v. *Acker*, 81 N. Y. 143; *Matter of Warner*, 39 App. Div. 91), the plaintiffs do not press their contention that the amendment was, as to their causes of action, unreasonable and, hence, inoperative. They predicate their demand for judgment on the second publication, which indubitably comes within the period prescribed by the amendment.

We arrive, then, at the pivot of the case, which is whether or not the second publication, occurring as it did in the trial of an action, was privileged.

The general rule covering privilege in judicial proceedings is expressed in *Youmans* v. *Smith* (153 N. Y. 214, 219) thus: " The law governing the privilege of parties and their counsel, so far as applicable to the case in hand, was well stated by Judge GROVER in *March* v. *Ellsworth* (50 N. Y. 309, 311) as follows: ' A counsel, or party conducting judicial proceedings, is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter, having no materiality or pertinency to such questions.' "

The privilege, it is quite settled, does not attach to immaterial, impertinent or irrelevant matters. (*Andrews* v. *Gardiner*, 224 N. Y. 440, 445; *Marsh* v. *Ellsworth*, 50 id. 309, 311.) This is emphasized in *Moore* v. *Manufacturers Nat. Bank* (123 N. Y. 420), where it was said (at p. 425): " There is another class of privileged communications where the privilege is absolute. They are defined in *Hastings* v. *Lusk* (22 Wend. 410). In this class are included slanderous statements made by parties, counsel or witnesses in the course of judicial proceedings, and also libelous charges in pleadings, affidavits or other papers used in the course of the prosecution or defense of an action. * * * This privilege, however, is not a license which protects every slanderous publication or statement made in the course of judicial proceedings. It extends only to such matters as are relevant or material to the litigation, or at least it does not protect slanderous publications plainly irrelevant and impertinent, voluntarily made, and which the party making them could not reasonably have supposed to be relevant. (*Ring* v. *Wheeler*, 7 Cow. 725; *Hastings* v. *Lusk*, 22 Wend. 410; *Gilbert* v. *People*, 1 Den. 41; GROVER, J., *Marsh* v. *Ellsworth*, 50 N. Y. 309; *Rice* v. *Coolidge*, 121 Mass. 393; *McLaughlin* v. *Cowley*, 127 id. 316.) "

In England the privilege assumes the dignity of a right; it is absolute and without restriction or qualification. Referring to the

English rule, it was said in the recent case of *People ex rel. Bensky* v. *Warden, etc.* (258 N. Y. 55, 59): " The English doctrine has not been adopted in this country to its full extent but has been limited so that statements made in the course of a judicial proceeding in order to be privileged, must be material and pertinent to the questions involved. (*Gilbert* v. *People*, 1 Den. 41; *Hastings* v. *Lusk*, 22 Wend. 410.) "

And in *Lesser* v. *International Trust Co.* (175 App. Div. 12) the principle is stated as follows: " A counsel or party conducting judicial proceedings is privileged with respect to words or writings used in the course of such proceedings reflecting injuriously upon others when such words and writings are material and pertinent to the question involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used. * * * In applying this principle the courts are liberal, even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceeding that may possibly be pertinent, they will not so regard it as to deprive its author of his privilege."

In the *Lesser* case the defendants were charged with libeling the plaintiff in a bankruptcy petition. In addition to alleging that the plaintiff conspired to defraud creditors — an allegation which the court in the libel action held pertinent to the subject-matter of the bankruptcy proceeding — was the averment that the plaintiff was a fugitive from justice. Holding the latter allegation not pertinent, the court said: " The statement that the plaintiff was a fugitive from justice was not pertinent in any way to the subject-matter, and hence did not come within the privilege. This was shown not to be true, although there was an investigation before the grand jury, and plaintiff's brother was indicted. It was not shown that the plaintiff had any knowledge thereof, or that he had departed from the jurisdiction with the intention of avoiding prosecution. This would justify the submission of the case to the jury."

The privilege doctrine is so stubbornly safeguarded that " the test of relevancy is satisfied if the defendant ' under the circumstances, believed that the language would have a tendency to move the court's discretion to grant the relief asked.' " (*Frank* v. *Zuch*, 240 App. Div. 109, 111; *People ex rel. Bensky* v. *Warden, etc., supra.*)

The rationale of the rule is discussed in the *Bensky* case (at pp. 59, 60) as follows:

" In applying the principle announced in the older decisions our courts have been careful not to give it a narrow or strict construc-

tion. They have consistently held that if the alleged defamatory words used by counsel or a party in the course of a judicial proceeding may possibly be pertinent they are privileged. It is only when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion that the privilege is lost. The underlying principle governing the courts of England and our own courts is that the proper administration of justice depends upon freedom of conduct on the part of counsel and parties to litigation. ' This tends to promote an intelligent administration of justice. To secure this is of much greater importance than to prevent the evils arising from reflections cast upon parties or witnesses.' (*Marsh* v. *Ellsworth,* 50 N. Y. 309, 312; *Youmans* v. *Smith,* 153 id. 214; *Laing* v. *Mitten,* 185 Mass. 233.)

" If a publication is privileged as to counsel it is privileged as to his client and the converse is true. (*Youmans* v. *Smith, supra,* at p. 210; *Andrews* v. *Gardiner,* 224 N. Y. 440, 446.)

" The determination of the question of privilege is a question of law, and if it be determined that the language used was not impertinent, the privilege is absolute. (*Sickles* v. *Kling,* 60 App. Div. 515; *Andrews* v. *Gardiner, supra,* at p. 446; *Byam* v. *Collins,* 111 N. Y. 143, 150.) "

Again, Seelman, in his admirable work on " The Law of Libel and Slander," eloquently and persuasively argues for the privilege at section 191, page 161, where he says: " The interest of society requires that whenever men seek the aid of courts of justice, either to assert or to defend rights, of person, property or liberty, speech and writing therein must be untrammelled and free. The good of all must prevail over the incidental harm to the individual. So the law offers a shield to the one who in a legal proceeding publishes a libel, not because it wishes to encourage libel, but because if men were afraid to set forth their rights in legal proceedings for fear of liability to libel suits greater harm would result, in the suppression of the truth. The law gives to all who take part in judicial proceedings, judge, attorney, counsel, printer, witness, litigant, a *right* to speak and to write, subject only to one limitation, that what is said or written bears upon the subject of litigation, that is, is pertinent, relevant, germane thereto. This right of all persons, within the limitation an absolute one, is improperly called a privilege. In Great Britain, it is an absolute right, regardless of whether the libelous matter is or is not pertinent. * * * It should be termed the right to publish a libel in judicial proceedings where the libel is pertinent to the litigation."

Recognizing the force and cogency of what has been said in behalf of the privilege, mindful of the mischief which might result from its unreasonable curtailment, and according the defendant all the latitude which the law allows, if the plaintiffs' alleged dishonest and illegal business practices had any possible relation to the subject-matter of the Westchester county action, it has not been called to my attention. Even if the plaintiffs cheated their customers, engaged in racketeering, padded accounts, were illiterate, inefficient — even if all that the letter says and implies were true — what did that have to do with the simple question of whether or not the corporate plaintiff was indebted to the defendant? These charges were not contained in a pleading or made in an affidavit, they were not uttered by counsel or party or witness during the trial, they were forwarded to a customer of the corporate plaintiff and hurled into the case apropos of what it does not appear. To borrow from *Gilbert* v. *People* (*supra*), it " obviously must have been thrown in to scandalize and annoy the defendant. * * * they might very well serve to irritate and disgrace the party." To permit a litigant to do this does not impress me as in consonance with justice. That the contents of the letter were in no wise pertinent or material to the controversy appears to me quite definite. (*Battu* v. *Smoot*, 211 App. Div. 101.)

The defendant's conception of the plaintiffs' rascality could in no sense be determinative of the legitimacy of the claim which the defendant asserted against the corporate plaintiff. More, his notions shed not even a dim ray of light upon its validity. The merits of the action in no wise — not even remotely — hinged upon the defendant's opinion of the plaintiffs expressed to a third party. To decide that the charges had a *possible* pertinency or relevancy would be starting imagination on a rampage.

In the process of administering justice courts must be zealous not to permit themselves to be employed as forums for the venting of spleen or for lacerating character, unless, to be sure, they be issues.

The privilege is a salutary one. More than that, it is essential to a proper and unfettered administration of justice. While its scope is wide, it has boundaries. One who transcends them must be halted. Abuse or misuse of the privilege must be condemned, just as its proper use must not be checked.

" This is the extent of the privilege; for if a party or his agent will pass beyond the prescribed limit to asperse and vilify another. by word or writing, he is without protection, and as in other cases, must abide the consequences of his own misconduct. If slanderous words are used, he is a slanderer; and if he offends in writing, he is

a libeller, and may be prosecuted both civilly and criminally as such." (*Gilbert* v. *People, supra.*)

Still quoting from the *Gilbert* case: " It would be lamentable if irrelevant, gratuitous and malicious attacks could be excused because inserted in a declaration upon other and distinct causes of action, and with which the vituperative charges had no connection whatever * * *; and as they were in no sense pertinent to the action they were libelous."

Although the rule has been criticized (Seelman, Law of Libel and Slander, § 207, p. 181), the burden of showing relevancy is upon the defendant. (*Marsh* v. *Ellsworth*, 31 N. Y. Super. Ct. 52; 32 id. 589; 50 N. Y. 309; *Moore* v. *Manufacturers National Bank*, 123 id. 420, 427; *Tierney* v. *Rupert*, 150 App. Div. 863.)

In this case the defendant has not undertaken to sustain the burden. He does not maintain that he believed the letter pertinent and, therefore, privileged. (*White* v. *Carroll*, 42 N. Y. 161.) He leans upon the incontrovertible fact that the letter was offered and received in evidence.

If merely introducing a letter in evidence is to be accepted as proof of a belief in its pertinency and materiality, then the limitation on the privilege is ripped off.

But, argues the defendant, the reception of the letter in evidence, particularly without objection, is *res adjudicata* of pertinency and materiality.

Does the receipt of the letter in evidence in the other action bind this court in this action as to pertinency and materiality? I think not. The letter was clearly inadmissible, but, since no objection to its introduction was offered, no issue regarding its admissibility could be raised on an appeal from the judgment in that action. While omission to object is inexplicable, it is not fatal here. It does not follow from an omission to object that in this libel action the matter is *res adjudicata*.

The libel complaint in *Kahane* v. *Murdoch* (218 App. Div. 591) alleged that an affidavit had been ordered stricken from the record as scandalous. The allegation was held bad on defendant's motion to strike it out. Said the court (at pp. 593, 594): " This is not a relevant allegation to the cause of action alleged in the complaint. It apparently seeks to set forth that a judicial determination as to the relevancy of the matters contained in the affidavit has already been had. It will be an issue in the action dependent upon proof with respect to whether or not there was any pertinency or relevancy to these alleged libelous statements in the former cause of action, and therefore, a recital of the judicial determination in a collateral matter striking the affidavit containing these matters

from the files of the court is not a proper or relevant allegation in the complaint, since the ruling pleaded would not be *res adjudicata* on that issue or in any way binding upon the question of relevancy now to be tried."

Seelman (§ 201, p. 169) says: " The other action, in that regard, is not admissible, but the court in the libel action must for itself determine on the pleadings and proof before it whether or not the libelous matter was possibly pertinent. This is especially so when the original action is between other persons, or not between the same identical parties as in the libel action."

The rule concerning the conclusory character of a judgment in a former action is succintly stated in *Rudd* v. *Cornell* (171 N. Y. 114, 127) as follows: " It is settled by the decisions of this court that a judgment is conclusive in a second action only when the same question was at issue in a former suit and the subsequent action was between the same parties or their privies, and that the conclusive character of a judgment extends only to the precise issues which were tried in the former action; they must be identical in each action, not merely in name, but in fact and in substance, and the party seeking to avail himself of a former judgment must show affirmatively that the question involved in the second action was material and actually determined in the former, as a former judgment will not operate as an estoppel as to immaterial or unessential facts, even though put in issue and directly decided. In other words, a former judgment is final only as to the facts which are actually litigated and decided, which relate to the issue therein, and the determination of which was necessary to the determination of that issue. (*Reynolds* v. *Ætna Life Ins. Co.*, 160 N. Y. 635, 651.) " (See, also, *Walker* v. *Man*, 142 Misc. 288; *McDonald* v. *Hygienic Ice & Refrigerating Co.*, 148 App. Div. 539.)

While there is a paucity of cases on the precise point in issue and no exact pattern has been presented, it would be carrying the doctrine of *res adjudicata* to a remote and barren terminus to hold that what was palpably impertinent and immaterial became pertinent and material by the omission to object to its admissibility or by the judgment in the Westchester action.

The defendant cites *Woodman* v. *Kidd* (25 App. Div. 254). There, however, the libelous matter was expressly held to have been material, relevant and competent in the prior action. Said the court: " It was claimed by Kidd to be material and relevant and competent, and was so held by the referee; and such ruling having been made in a case between the same parties as are here on the record, the ruling is a binding adjudication."

In any event, the *res adjudicata* principle cannot operate against the individual plaintiff who was not a party to the Westchester action. (*Lowendahl* v. *Baltimore & Ohio R. R. Co.*, 247 App. Div. 144.)

The fact that the individual plaintiff was a large stockholder and president of the corporate plaintiff does not make out a case of *res adjudicata* as to him.

" Mutuality and privity have been held not to exist in cases of judgments affecting solely corporations or their officers or trustees with respect to each other. * * * If the sole stockholder of a corporation is not in privity with it and the corporate entity may not be disregarded, still less, as here, should it be held that an officer of the corporation is in privity therewith and that a judgment in favor of the latter should inure to the defendant in his individual capacity." (*Kessler* v. *Fligel*, 240 App. Div. 232, 234. See, also, *Williamson* v. *Casa-Eguia*, 226 id. 195; *Spitz* v. *Brooks & Son, Inc.*, 210 id. 438.)

I conclude, therefore, that, as regards this libel case, at least, there has been no adjudication that the offending letter was pertinent, relevant or material, and more particularly that the admissibility of the letter in the other action does not preclude the individual plaintiff from asserting its impertinency, irrelevancy and immateriality here. Finally, the defendant has utterly failed to establish the burden of proving pertinency, relevancy or materiality, or his belief therein.

This brings us to the question of damages. Special damages are not pleaded nor have they been established. Malice may be inferred. (*O'Connell* v. *Press Publishing Co.*, 214 N. Y. 352; *Reporters' Assn.* v. *Sun Printing & Pub. Assn, supra.*) The plaintiffs do a large contracting business. No actual damage to credit or reputation is shown, but proof of special damages is not essential. (*Morey* v. *M. J. Assn.*, 123 N. Y. 207, 210; *Van Ingen* v. *Mail & Express Pub. Co.*, 14 Misc. 326; affd., 156 N. Y. 376.) Nevertheless, the right as a matter of law to compensatory damages does not necessarily inply a right to substantial damages. " Substantial compensatory damages must be founded upon a finding of substantial injury." (*Abell* v. *Cornwall Industrial Corp.*, 241 N. Y. 327, 335.)

"Damages given as a compensation should be precisely commensurate with the injury." (*Gressman* v. *Morning Journal Assn.*, 197 N. Y. 474, 480.)

No proof of a general circulation of the charges appears. (*Zator* v. *Buchel*, 231 App. Div. 334.)

Rather than speculate as to damages, and perceiving no substantial injury, it seems to me wiser and more just to award nominal damages only. This will serve as adequate vindication. Accordingly, judgment is granted to each plaintiff for six cents.