Ellis J. Staley, Jr., J.
This is a motion for an order dismissing the complaint herein pursuant to the provisions of subdivision 4 of rule 106 of the Rules of Civil Practice on the ground that the complaint fails to state a cause of action. The complaint herein alleges that a certain letter dated November 19, 1959 written by the defendant, David M. Potts, to the plaintiff is 1 ‘ false, libelous, vicious and defamatory ’ ’ and by reason of the publication of said letter ‘ ‘ the plaintiff has been held up to contempt and reproach, has been greatly injured in his reputation, and has suffered great pain and mental anguish and has been irreparably injured in his profession and professional standing
*184 The alleged libelous letter was an incident in a long and bitter will contest pending in the Surrogate’s Court of Rensselaer County in the matter of the probate of the last will and testament of Monroe L. Dix. The said last will and testament was executed on August 14,1958 and Monroe L. Dix died on August 30, 1958, a resident of Rensselaer County and State of New York. On the 9th day of September, 1958 a petition was filed in Rensselaer County Surrogate’s Court for the probate of said last will and testament by David C. Anchin, the executor named therein. Thereafter, one Rose Selby, a distributee of said decedent, appeared in the probate proceedings and filed an answer and objection to the probate of said instrument. On July 27, 1959 the Chemical Corn Exchange Bank, an alternate executor and trustee named in the instrument offered for probate, was appointed temporary administrator of the estate of Monroe L. Dix by order of the Surrogate’s Court of Rensselaer County.
The defendants in this action for libel are David M. Potts, individually, John Kadel, Abraham Wilson and David M. Potts, as copartners in the law firm of Kadel, Wilson and Potts, Esqs., and the Chemical Bank New York Trust Company (successor to Chemical Corn Exchange Bank).
The petitioners and their respective attorneys in the probate proceeding on the date of the publication of the alleged libelous letter were as follows:
Chemical Bank New York Trust Company and David C. Anchin appeared by Kadel, Wilson and Potts, Esqs., with the law firm of Wager, Taylor, Howd and Brearton, Esqs., as counsel; Elynor M. Dix, widow of the decedent and a legatee named in said will, appeared ¡by Joseph B. Mulholland, Esq., with Morris Simon, Esq., and the law firm of Murphy, Aldrich, Guy, Broderick & Simon, Esqs., as counsel; Rose Selby, as contestant, appeared by Krause, Hirsch, Gross & Heilpern, Esqs.
During the course of the probate proceedings numerous motions, appeals and cross appeals were instituted and were reported in the New York Official Reports as follows: Matter of the Probate of the Will of Monroe L. Dix, Deceased (15 Misc 2d 194, appeal dismissed 10 A D 2d 589; 21 Misc 2d 864 [3 opinions], affd. 11 A D 2d 555, motion for leave to appeal denied 9 N Y 2d 712; 23 Misc 2d 443, appeal dismissed 11 A D 2d 747, 960; also 10 A D 2d 775,12 A D 2d 675 [Cases 13, 14]).
The record on appeal in the appeal decided by the Appellate Division, Third'Department (12 A D 2d 675, case 13) is particularly pertinent to this motion since the appeal therein was from an order of the Surrogate’s Court of Rensselaer *185 County which order directed that a copy of a letter dated November 11,1959, written by the plaintiff herein and addressed to The President, Chemical Bank New York Trust Company, 30 Broad Street in the City of New York and State of New York, and the copy of the answering letter of Kadel, Wilson and Potts, Esqs., dated November 19,1959 should not be considered as part of the record of the aforesaid probate proceeding.
The latter letter contains the alleged libelous statements and to properly consider the allegations of the complaint herein, the two letters are fully set forth as follows:
November 11, 1959
(Personal and Confidential)
The President
Chemical Bank New York Trust Company 30 Broad Street New York City, New York Re: Estate of Monroe L. Dix
Dear Sir:
The Chemical Corn Exchange Bank was appointed Temporary Administrator of the Estate of Monroe L. Dix, and an Appeal from that Order is now pending in the Appellate Division of the Third Judicial Department. We are counsel to Joseph B. Mulholland, attorney for the widow, Elynor M. Dix. The record reflects a sordid picture of what the widow contends is a spurious document, and since your Bank is now the successor to Chemical Com Exchange Bank, as Temporary Administrator, we are compelled to write you, direct, in view of the unwarranted conduct of those who Com Chemical chose to act as attorneys for the Bank in the capacity of Temporary Administrator.
Mrs. Dix and her husband (the decedent) owned a horse named “ Lady Pace ” and it is the contention of Mrs. Dix as is evidenced by the enclosed photostatic letters, that she owned a % interest in said horse, and that Mr. Dix owned a % interest at the time of his death. The continuance of the ownership of said horse only resulted in expense for maintenance and care, which was unwarranted. It was therefore obvious that the horse should be sold and disposed of, in order to terminate this unwarranted expense. The horse was ultimately sold for $4000.00 — Mrs. Dix, therefore, is entitled to $3000.00. Mrs. Dix consented to the sale of the horse for that price, as did the Bank, upon a petition made by the Bank to the Surrogate’s Court of this County, said Bank, as .Temporary Administrator, to retain the money until there was a determination as to how it should be distributed. You will find herewith enclosed a photostat of a letter under date of September 8, 1959, addressed to Wager, Taylor, Howd & Brearton, indicating our position in behalf of Mrs. Dix. Nothing has been done to date. We also enclose herewith photostat of a letter dated September 9, 1959, received from Wager, Taylor, Howd & Brearton, who have been acting as counsel for Kadel, Wilson & Potts, attorneys. Needless to say, we have not agreed, and do not now agree with Mr. Brearton’s contention that a fifty-fifty interest existed. Enclosed you will also find a photostat of our letter dated September 17, 1959, which is self-explanatory, wherein we demanded that Mrs. Dix be paid her interest in the horse. Had either Mrs. Dix or we known of the unwarranted attitude on the part of your counsel, in behalf of the Bank, we should never have consented to the sale of the horse. In the petition made by your Mr. Ralph Farrington, personal trust officer sworn to on August 26, 1959', in paragraph *186 “7” .thereof, Mr. Farrington swore that — “Elynor M. Dix asserts a three-quarter interest in said horse. Petitioner has not been able as yet to determine the precise extent of decedent’s interest in the horse.” Mr. Farrington, and all other officers of your Bank were guided by and informed by Mr. David Potts, as to all matters pertaining to this Estate. You will notice from the photostat of our letter of September 17,1959, that we stated — "If the Temporary Administrator can establish any contrary position, we shall be glad to receive such information or evidence, and give it careful consideration.” We meant what we said, but the Bank and Potts eloquently kept silent until we received, under date of October 7, 1959, a purported letter from Wager, Taylor, Howd & Brearton, enclosing a purported letter from Mr. Potts, referring to an alleged agreement relating to this horse, dated October 9, 1957, almost two years ago.
On several occasions, by telephone, we requested that the original agreement be produced for our examination and the examination of Mrs. Dix. This we were promised, but the promise was never kept and on October 15, 1959, we addressed a letter to Messrs. Wager, Taylor, Howd & Brearton, a copy of which was also mailed to Kadel, Wilson & Potts, and a photostat of that letter is also enclosed herewith. Up to this very moment, no attempt, effort or agreement has been suggested or offered by your counsel, to exhibit this alleged purported agreement, of which we were furnished a Thermofax copy. If your Bank demanded payment upon a promissory note and the maker asked to see the note to determine its existence, propriety or genuineness, I am positive that your Bank would not hesitate a minute, to exhibit the original note before payment was made. We have done nothing less and nothing more.
On August 19, 1959, at The Manufacturers Trust Company, when a box of the decedent was opened, we talked about the advisability of selling this horse to your Mr. Fimbel, in the presence of Mr. Potts. Prior to that time, we talked to Mr. Fimbel by long distance telephone. Mr. Potts and Mr. Fimbel therefore knew, before any order was granted authorizing the sale, that it was desirable to sell this horse — yet, not a word from Potts that he had a purported alleged agreement which he now refuses to exhibit the original for verification and other purposes.
We have addressed this letter to you as the Head of a Bank, because we are satisfied that as President, you undoubtedly know nothing about what’s going on in this matter, but since your Bank has been appointed as Temporary Administrator, and it is your duty as such, to produce this instrument, despite the refusal and dilatory tactics practiced by Mr. Potts, we are constrained to write to you so that you may carry out an honorable obligation which is not violative of Mrs. Dix' legal rights, but the principles of morality and equity. We write this in advance of a compulsion to make a motion for the filing of this original purported agreement, or its exhibition to us and Mrs. Dix for verifying purposes and other purposes. We do this as a matter of courtesy to the Head of a Bank who undoubtedly knows nothing about what is going on in this instance, as above stated. Perhaps, some day, you will learn about this entire deal from Genesis, on — then you will be able to form your own conclusions.
We would therefore request of you, as a temporary arm of the Court, to make available, without delay, the purported alleged agreement of October 9, 1957, either by exhibiting to Mrs. Dix, in the presence of the writer, or filing the same in Surrogate’s Court, without'delay; otherwise, we shall be constrained to exercise the rights given Mrs. Dix by law. However, we trust that this will not be necessary, and shall expect to hear from you without delay.
Very truly yours,
MORRIS SIMON
*187 MS:FHG
Enclosures
cc (letter, only) to:
Hon. Maurice D. Isenbergh Surrogate
Rensselaer County Courthouse Troy, New York
Messrs. Kadel, Wilson & Potts
30 Broad Street
New York 4, New York
Messrs. Wager, Taylor, Howd & Brearton
5 Broadway Troy, New York
Messrs. Krause, Hirsch, Gross & Heilpern
521 Fifth Avenue
New York 17, New York
The foregoing letter having been referred by the Chemical Bank New York Trust Company, as temporary administrator of the estate of Monroe L. Dix, to its attorneys for reply, David M, Potts, Esq., wrote the following letter to Morris Simon, Esq., on November 19,1959:
Law Offices
KADEL, WILSON & POTTS
Thirty Broad Street New York 4, N. Y.
Telephone Hanover 2-8800 November 19, 1959
Morris Simon, Esq.
Murphy, Aldrich, Guy, Broderick & Simon 297 River Street Troy, New York
Re: Estate of Monroe L. Dix
Dear Mr. Simon:
With reference to your letter of November 11, 1959 to the Chemical Bank New York Trust Company, as Temporary Administrator in the above:
1. It was quite amusing that the letter was marked “Personal and Confidential” and at the same time sent:
(a) to the office of the President of the bank, without naming him;
(b) to the Surrogate presiding over the Court in which this matter is pending;
(e) to all attorneys and their counsel.
2. It is also a comical absurdity that in writing directly to the Temporary Administrator, rather than to its attorneys, you should charge anyone with “ unwarranted conduct.” The very letter itself is a violation of Canon 9 of the Canons of Professional Ethics, which states: “ A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to negotiate or compromise the matter with him, but should deal only with his counsel.”
*188 3. The letter is libelous. It is ridiculous for one in libeling another attorney in writing to his client, his counsel, to the Court and other attorneys to speak of “ the principles of morality and equity.”
4. There is more to the farce. We notice that Mrs. Dix, who is thoroughly familiar with the transfer of title to “ Lady Pace,” who signed the agreement of transfer of October 9, 1957 and who has been furnished a copy of it, does not herself refer to it as an “alleged purported agreement.” Why is there no claim filed in her behalf ? Why is there no attempt to comply with Surrogate’s Court Act, § 207 ? Why, if there be a sincere quest for a determination, is there resort to libel, rather than to law; to unethical indirection rather than to recognized practices; to invective and accusation rather than to lawyer-like procedure? Suspicion is feigned only by one who cannot make an open verified statement before the Court lest he be confounded when confronted with the written denial.
5. You have written “ * * * we are satisfied from the documentary evidence * * * ” when you had no documentary evidence supporting your view. (Letter of September 8, 1959.)
6. You made demand for payment “without delay” stating: “I am satisfied that Mrs. Dix owns % interest.” Nevertheless, you peremptorily opposed the Temporary Administrator’s application to pay the overdue funeral bill, the past due government taxes and a margin account.
7. Gallantly you condescended: “ If the Temporary Administrator can establish any contrary position, we shall be glad to receive such information or evidence and give it careful consideration.” (Letter of September 17, 1959.) Yet when the agreement of title was furnished along with a recital of the accompanying circumstances you termed it “ a purported letter * * * enclosing a purported letter * * * referring to an alleged agreement * * * ” (Letter of November 11,1959, lines 11/13 page 2).
8. You are aware, of course, that the order of the Surrogate for the sale of “Lady Pace” requires that the Temporary Administrator hold the proceeds “ pending the further order of the Surrogate ”. Hence the Temporary Administrator is without authority to pay any of the proceeds to Mrs. Dix on its own volition. The approval of the Court must be obtained.
In view of the foregoing we feel we would be justified to await the filing of Mrs. Dix’ claim and a formal proceeding as required by the order re “Lady Pace ” before producing the original agreement. However, you must now, upon maturer consideration, deplore the farcical course you so unfortunately pursued. Since we, at least, do not intend to foster delay or complication, we will file a photostatic copy of the agreement with the Surrogate. The original was not in our possession after its execution; it was located subsequent to your letter of November 11th. A conformed copy was in our files of which we gave you a Thermofax copy.
However pitiful were your actions, we nevertheless must reserve the right to move to strike your letter from the record unless it is withdrawn.
DMP :LB
Very truly yours,
(s) DAVID M. POTTS David M. Potts
ce: Hon. Maurice D. Isenbergh Joseph B. Mulholland, Esq.
Krause, Hirsch, Gross & Heilpem, Esqs. Wager, Taylor, Howd & Brearton, Esqs.
*189 The chronological sequence of the pertinent facts in the probate proceeding for the probate of the last will and testament of Monroe L. Dix leading np to the publication of the aforesaid letters appears as follows:
July 7, 1959
The plaintiff herein, Morris L. Simon, appears in Surrogate’s Court, Rensselaer County and states on the record that he has been retained as counsel to Joseph B. Mulholland, Esq., attorney for Elynor M. Dix in the proceeding for the probate of the last will and testament of Monroe L. Dix, and Mr. Mulholland and Mrs. Dix both agree with Mr. Simon’s statement. At that time one of the assets of the estate of Monroe L. Dix was a part interest in a race horse, “ Lady Pace ”.
July 27, 1959
The Surrogate of Rensselaer County appoints the Chemical Corn Exchange Bank as temporary administrator in the estate of Monroe L. Dix with Kadel, Wilson and Potts, Esqs., as its attorney with Wager, Taylor, Howd and Brearton, Esqs., of counsel.
August 5, 1959
Morris L. Simon writes a letter to the Chemical Corn Exchange Bank to the attention of Mr. William J. Pimbel stating that one Robert J. Koemer of Berlin, New York had offered to purchase the horse “Lady Pace” for the sum of $4000.00. The letter further stated that it was Mr. Simon’s understanding that Mrs. Elynor Dix owned a three-quarter interest in the horse and that the estate of Monroe L. Dix owned the remaining one-quarter interest.
August 26, 1959
The Chemical Corn Exchange Bank, temporary administrator of the estate of Monroe L. Dix, petitions the Surrogate’s Court of Rensselaer County for an order approving the sale of “ Lady Pace ” to Robert J. Koerner and directing the said temporary administrator to deposit the proceeds of the sale pending a determination of the rights of the said estate and Elynor M. Dix to the said proceeds.
September 8, 1959
The sum of $4000.00 representing the proceeds of the sale of “ Lady Pace ” is forwarded by Morris Simon to Wager, Taylor, Howd and Brearton, Esqs. as counsel for the temporary administrator and Mr. Simon further requested the payment of $3000.00 to Mrs. Dix as her share of the proceeds.
September 9, 1959
Mr. Brearton, as counsel for the temporary administrator, writes Mr. Morris Simon and asserts that it may be that the estate of Monroe L. Dix owned one-half interest in “ Lady Pace ”.
September 17, 1959
Mr. Simon writes a letter to Mr. Brearton reasserting his claim that Mrs. Dix owned a three-quarter interest in “ Lady Pace ” and again demanded payment to Mrs. Dix of the sum of $3000.00.
September 18, 1959
Mr. Brearton sends the letter written by Mr. Simon on September 17, 1959 to the temporary administrator.
*190 October 6, 1959
Mr. David M. Potts, one of the attorneys for the Chemical Com Exchange Bank the temporary administrator of the estate of Monroe L. Dix, writes a letter to Mr. Brearton enclosing therein an agreement dated October 9, 1957 signed by Joyce Camden, Eleanor Dix and Howard Camden purporting to sell “ Lady Pace ” to Dixfield Associates composed in part of Monroe and Eleanor Dix.
October 7, 1959
Mr. Brearton sends a copy of Mr. Potts’ letter dated October 6, 1959 with copies of enclosures to Joseph B. Mulholland, Esq., the attorney for Mrs. Dix.
October 15, 1959
Mr. Simon writes Mr. Brearton and requests the original agreement dated October 9, 1957 relative to the sale of “ Lady Pace ” to Dixfield Associates. A copy of this letter was sent to Kadel, Wilson and Potts, Esqs.
November 11, 1959
Mr. Simon writes a letter to The President Chemical Bank New York Trust Company hereinbefore set forth in its entirety.
November 17, 1959
Mr. William J. Fimbel, Assistant Trust Officer of the Chemical Bank New York Trust Company writes Mr. Simon and advises him that Mr. Simon’s letter of November 11, 1959 has been referred to Kadel, Wilson and Potts, Esqs., for reply.
The reply to Mr. Simon by David M. Potts dated November 19, 1959 is the subject of the complaint herein which the plaintiff alleges is “ false, libelous, vicious and defamatory ”. Copies of this letter were also sent by Mr. Potts to Hon. Maurice D. Isenbergh, Surrogate of Rensselaer County; Joseph B. Mulholland, Esq.; Krause, Hirsch, Gross and Heilpern, Esqs. and Wager, Taylor, Howd and Brearton, Esqs.
All the defendants here assert as the basis for their motion that the letter of November 19, 1959 addressed to the plaintiff and which he claims libelled him was written in reply to the plaintiff’s letter of November 11, 1959 and that the contents of both letters were pertinent to the pending proceeding and the administration of the estate of Monroe L. Dix by the temporary administrator. The defendants further assert that since the contents of the letters were pertinent to the pending litigation in which both the correspondents appeared as attorneys for opposing parties, that the letter of November 19, 1959 was absolutely privileged and could not, therefore, become the subject of a libel suit. Defendants further assert that the failure of the plaintiff to allege in his complaint that the letter of November 19, 1959 was not pertinent to the pending litigation makes the complaint defective and fails to state a cause of action for libel.
The defendant, Chemical Bank New York Trust Company, further asserts that it could not be liable for any libel published *191 by its attorneys representing it in pending litigation and that such a publication would be beyond the authority of the attorneys to act and beyond the scope of their employment.
It is well settled that statements made or published in the course of judicial proceedings are absolutely privileged if relevant and pertinent to the issues involved. (Youmans v. Smith, 153 N. Y. 214; Andrews v. Gardiner, 224 N. Y. 440, 446; Noll v. Kerby, 258 App. Div. 840; Fleming v. Adams, 153 N. Y. S. 2d 964; Rusciano & Son Corp. v. Mihalyfi, 165 Misc. 932; Feinstein v. Kaye, 185 Misc. 185.)
In Youmans v. Smith (153 N. Y. 214, supra) at pages 219-220 the court stated: ‘ ‘ The law governing the privilege of parties and their counsel, so far as applicable to the case in hand, was well stated by Judge G-boveb, in Marsh v. Ellsworth (50 N. Y. 309, 311), as follows: ‘ A counsel, or party conducting judicial proceedings, is privileged in respect to words or writings used in the course of such proceedings reflecting injuriously upon others, when such words and writings are material and pertinent to the questions involved; * * * within such limit, the protection is complete, irrespective of the motive with which they are used; but such privilege does not extend to matter having no materiality or pertinency to such questions. ’ (Gilbert v. People, 1 Denio 41; Hastings v. Lusk, 22 Wend. 410; Ring v. Wheeler, 7 Cow. 725.) In applying this principle the courts are liberal, even to the extent of declaring that where matter is put forth by counsel in the course of a judicial proceedings that may possibly be pertinent, they will not so regard it as to deprive its author of Ms privilege, because the due administration of justice requires that the rights of clients should not be imperiled by subjecting their legal advisers to the constant fear of suits for libel or slander. * * * Any other rule would be an impediment to justice, because it would hamper the search for truth and prevent making inquiries with that freedom and boldness which the welfare of society requires. If counsel through an excess of zeal to serve their clients, or in order to gratify their own vindictive feelings, go beyond the bounds of reason and by main force bring into a lawsuit matters so obviously impertinent as not to admit of discussion, and so needlessly defamatory as to warrant the inference of express malice, they lose their privilege and must take the consequences. In other words, if the privilege is abused, protection is withdrawn.”
The determination of the question of privilege is a question of law and “ It is only when the language used goes beyond the bounds of reason and is so clearly impertinent and needlessly defamatory as not to admit of discussion that the privilege is *192 lost.” (People ex rel. Bensky v. Warden of City Prison, 258 N. Y. 55, 59.)
It has been further established by the courts that a letter between parties or their attorneys in connection with matters pertinent to pending litigation in which they have an interest is privileged and cannot form the basis of a cause of action for libel. (Zirn v. Cullom, 187 Misc. 241; Inselberg v. Trosty, 190 Misc. 507; Simon v. Stim, 11 Misc 2d 653, affd. 10 A D 2d 647.)
There is no denial by either party here that at the time of the publication of the letter of November 19, 1959, the plaintiff and defendants were actively interested in the pending probate proceeding and the administration of the estate of Monroe L. Dix. The plaintiff’s letter of November 11, 1959 addressed to the president of the temporary administrator was a letter of inquiry relating to one of the assets of the said estate. The reply to that letter by the attorney for the temporary administrator dealt mainly with the administration of the estate by the temporary administrator. Both letters were published by sending copies to all the attorneys who had appeared in the pending probate proceeding and, in addition, to the Surrogate of Rensselaer County before whom the proceeding was pending.
The letter of November 19 indicates that it is a reply on behalf of the temporary administrator to the plaintiff’s letter of November 11; it refers in paragraph 4 to the transaction involving the transfer of title to ‘1 Lady Pace ’ ’ in which the estate claimed an interest; it refers in paragraph 5 to plaintiff’s assertion of possessing “documentary evidence” supporting the claim of plaintiff’s client to a share of the proceeds from the sale of “ Lady Pace ”; it refers in paragraph 6 to plaintiff’s demand for payment of his client’s share of the proceeds from the sale of “Lady Pace” and it continues in paragraphs 7 and 8 to discuss the transaction between the parties relative to the sale of “ Lady Pace The libelous material, if it can be held to be libelous, is contained in paragraphs 2 and 3 where the writer concludes that the plaintiff violated canon 9 of the Canons of Professional Ethics and that the plaintiff’s letter of November 11 was libelous.
It is my conclusion from an analysis of the letter of November 19 that such letter was patently pertinent to the probate proceedings in which the plaintiff and defendants were interested, and that, therefore, an absolute privilege existed in favor of the defendants.
It is further my opinion that if all of the statements made by the defendant, David M. Potts in his letter of November 19, *193 liad been made in open court they would have been held to be pertinent and privileged. As Judge Caedozo stated in Andrews v. Gardiner (224 N. Y. 440, 446, supra): “ If the statements had been made in court, there is no doubt, since they were pertinent, that the privilege would have been absolute
The plaintiff further claims that even if the letter of November 19 was pertinent to the pending proceeding, that the defendants have waived their right to an absolute privilege and are estopped from availing themselves of such privilege by reason of the motion made by the defendants to have the letters of November 11 and November 19 stricken from the files of the probate proceeding. Such motion was made returnable before the Surrogate of Eensselaer County on November 30, 1959 and the decision of the Surrogate was rendered on January 11, 1960 in which he determined that the marking of the carbon copies of said letters should be changed from “ filed ” to that of “received ” and that they should be removed from the regular file of the case and delivered to the Surrogate to be placed in his letter file. This decision was affirmed by the Appellate Division (Matter of Dix, 12 A D 2d 675, supra).
The present cause of action accrued on November 20, 1959, the date of the publication of the alleged libelous letter. In my opinion no subsequent act by either party could alter the rights of either the plaintiff or the defendants as they existed at the time of the publication relative to a cause of action for libel. However, the courts have consistently held that even where libelous material was stricken as impertinent in the original proceeding, the privilege remained for the benefit of the party charged with libel. (Lesser v. International Trust Co., 175 App. Div. 12; Chapman v. Dick, 197 App. Div. 551; Kahane v. Murdoch, 218 App. Div. 591; Rusciano & Son Corp. v. Mihalyfi, supra; Marson v. Darrow, 8 A D 2d 307.)
In the case of Kahane v. Murdoch (supra) the libel complaint alleged that an affidavit containing the alleged libelous material had been ordered stricken from the record as scandalous. The court held that the allegation was bad and the defendant’s motion to strike it out was granted. The court stated in the opinion (pp. 593-594) as follows: “This is not a relevant allegation to the cause of action alleged in the complaint. It apparently seeks to set forth that a judicial determination as to the relevancy of the matters contained in the affidavit has already been had. It will be an issue in the action dependent upon proof with respect to whether or not there was any pertinency or relevancy to these alleged libelous statements in the, former cause *194 of action, and, therefore, a recital of the judicial determination in a collateral matter striking the affidavit containing these matters from the files of the court is not a proper or relevant allegation in the complaint, since the ruling pleaded would not be res adjudicata on that issue or in any way binding upon the question of relevancy now to be tried ’
The defendants, as a further defense, claim that the plaintiff’s complaint is inadequate by reason of his failure to allege that the letter complained of was not pertinent to the probate proceeding. The cases appear to differ in relation to the burden of showing relevance and pertinency of the alleged libelous material in the original proceeding’. However, the more recent cases support the rule that the burden is upon the plaintiff and irrelevancy must be alleged in the complaint. (Smithers v. Leslie, 249 App. Div. 828; Zefferer v. Campbell, 3 A D 2d 856; Feldman v. Bernham, 6 A D 2d 498, affd. 7 N Y 2d 772.)
In Zefferer v. Campbell (supra) the Appellate Division, Second Department affirming an order granting a motion to dismiss a complaint in libel for insufficiency stated as follows: “In any event, there is no factual allegation in the complaint showing that the statement was irrelevant, an allegation which is essential in the light of the fact that the affidavit had been submitted in a legal proceeding ”.
The last question is whether the defendant, Chemical Bank New York Trust Company has an additional defense by reason of its assertion that the acts of its attorneys in publishing the letter of November 19 were beyond the attorneys’ authority or scope of employment. In my opinion the act of its attorneys was in the scope of their employment and, by that very reason, the defendant, Chemical Bank New York Trust Company, is entitled to the defense of absolute privilege. It has been held that if a publication is privileged as to counsel, it is privileged as to his client and the converse is true. (Youmans v. Smith, supra; Andrews v. Gardiner, supra; Rusciano & Son Corp. v. Mihalyfi, supra.) Therefore, the Chemical Bank New York Trust Company is entitled to the defense of absolute privilege.
The plaintiff has failed to state a cause of action in his complaint to support an action for libel and the defendants have sustained their right to the defense of absolute privilege. The motion for an order dismissing the complaint herein for failure to state a cause of action is, therefore, granted.